COOLEY LLP
KATHLEEN HARTNETT (314267)
(khartnett@cooley.com)
JOSEPH D. MORNIN (307766)
(jmornin@cooley.com)
101 California Street, 5th Floor
San Francisco, California 94111-5800
Telephone:   (415) 693 2000
Facsimile:    (415) 693 2222

TRAVIS LEBLANC (194463)
(tleblanc@cooley.com)
CHARLES A. WOOD (310702)
(cwood@cooley.com)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
Telephone:   (202) 842 7800
Facsimile:    (202) 842 7899

Attorneys for Defendant
FabFitFun, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

CHERYL GASTON, Individually and on Behalf of All Others Similarly Situated,

          Plaintiff,

    v.

FABFITFUN, INC.,

          Defendant.

Case No. 2:20-cv-09534-RGK-E

**DEFENDANT FABFITFUN, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY THE PROCEEDINGS, OR, ALTERNATIVELY, TO DISMISS PLAINTIFF'S COMPLAINT**

Hearing Date:  February 22, 2021
Hearing Time:  9 a.m.
Judge:  Honorable R. Gary Klausner

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT FABFITFUN'S MEMO ISO MTC
ARBITRATION, OR, ALTERNATIVELY, TO DISMISS
CASE NO. 2:20-CV-09534-RGK-E

# TABLE OF CONTENTS

**Page**

I.    Introduction ................................................................................................. 1

II.   Statement of Facts ....................................................................................... 3

    A.    FabFitFun. ........................................................................................... 3

    B.    The Incident. ....................................................................................... 3

    C.    Plaintiff Gaston. .................................................................................. 4

    D.    Plaintiff's Agreement to FabFitFun's Terms, Including Individual Arbitration. ................................................................... 4

    E.    The Complaint's Conclusory Allegations ........................................ 6

III.  Legal Standards ........................................................................................... 7

IV.   The Motion to Compel Arbitration Should Be Granted ............................ 9

    A.    The Relevant Inquiry Under the FAA. ............................................... 9

    B.    A Valid Arbitration Agreement Exists Between Plaintiff and FabFitFun. ..................................................................................... 9

        1.    Plaintiff Assented to the Agreement. ..................................... 10

        2.    The Agreement is Not Unconscionable. ................................. 11

    C.    Arbitrability Is for the Arbitrator to Decide, But in Any Case, The Claims in the Complaint are Arbitrable. ................................... 12

    D.    The Complaint Should Be Dismissed, Or At Least Stayed Pending Arbitration. ......................................................................... 14

V.    Alternatively, Plaintiff's Claims are Subject to Dismissal ..................... 15

    A.    Plaintiff Lacks Article III Standing. ................................................. 15

        1.    No Standing Based on Risk of Fraud or Identity Theft. ......... 15

        2.    No Standing Based On Other Claimed Harms. ...................... 17

    B.    Plaintiff Fails to State a Claim Upon Which Relief May Be Granted. ............................................................................................. 18

        1.    Plaintiff Fails to Allege Proximately Caused Harm for Any Claim. .............................................................................. 18

        2.    Plaintiff Fails to Plead a Cognizable Liability Theory ........... 20

VI.   Conclusion ................................................................................................. 20

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ables v. Brooks Bros. Grp., Inc.*,
No. CV 17-4309, 2018 WL 8806667 (C.D. Cal. June 7, 2018) ......................... 16

*In re Adobe Systems, Inc. Privacy Litigation*,
66 F. Supp. 3d 1197 (N.D. Cal. 2014) ................................................................ 15

*Anderson v. Pitney Bowes, Inc.*,
No. C 04-4808, 2005 WL 1048700 (N.D. Cal. May 4, 2005) ...................... 14-15

*Andre v. Superior Ct.*,
2 Cal. App. 4th 11 (1991) ................................................................................... 19

*Associated Gen. Contractors v. Metro. Water Dist.*,
159 F.3d 1178 (9th Cir. 1998) .............................................................................. 8

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ............................................................................................. 7

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) ........................................................................................... 14

*Baltazar v. Forever 21*, Inc.,
62 Cal.4th 1237 (2016) ....................................................................................... 11

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) .............................................................. 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................................... 8-9

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ............................................................................ 13

*Capelli Enters., Inc. v. Fantastic Sams Salons Corp.*,
No. 16-cv-03401, 2017 WL 130284 (N.D. Cal. Jan. 13, 2017) ........................... 8

*Caviani v. Mentor Graphics Corp.*,
No. 19-cv-01645, 2019 WL 4470820 (N.D. Cal. Sept. 18, 2019) ............... 12-13

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEFENDANT FABFITFUN'S MEMO ISO MTC
ARBITRATION, OR, ALTERNATIVELY, TO DISMISS
CASE NO. 2:20-CV-09534-RGK-E

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ......................................................................... 15

*Corona v. Sony Pictures Ent., Inc.*,
    No. 14-cv-09600, 2015 WL 3916744 (C.D. Cal. June 15, 2015) ............... 17, 19

*Cronin v. Monex Deposit Co.*,
    No. SACV 08-1297, 2009 WL 412023 (C.D. Cal. Feb. 17, 2009) .................... 13

*Crypto Asset Fund, LLC v. MedCredits, Inc.*,
    No. 19CV1869, 2020 WL 1506220 (S.D. Cal. Mar. 30, 2020) ........................... 9

*Dickey v. Ticketmaster LLC*,
    No. CV 18-9052, 2019 WL 9096443 (C.D. Cal. Mar. 12, 2019) ..................... 11

*Dittenhafer v. Citigroup*,
    No. C 10–1779, 2010 WL 3063127 (N.D. Cal. Aug. 2, 2010) ......................... 14

*Dupler v. Orbitz, LLC*,
    No. CV 18-2303, 2018 WL 6038309 (C.D. Cal. July 5, 2018) ............. 11, 12, 14

*Engl v. Nat. Grocers by Vitamin Cottage, Inc.*,
    No. 15-cv-02129, 2016 WL 8578252 (D. Colo. Sept. 21, 2016)...................... 16

*Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*,
    528 U.S. 167 (2000) .......................................................................... 8

*Garcia v. Trademark Constr. Co.*,
    No. 18-CV-1214, 2019 WL 1317329 (S.D. Cal. Mar. 22, 2019) ....................... 1

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) ................................................................. 7, 9, 12

*Holloway v. Bristol-Meyers Corp.*,
    485 F.2d 986 (D.C. Cir. 1973)........................................................... 20

*Hopkins & Carley, ALC v. Thomson Elite*,
    No. 10-CV-05806, 2011 WL 1327359 (N.D. Cal. Apr. 6, 2011) ..................... 14

*Huynh v. Quora, Inc.*,
    No. 18-cv-07597, 2020 WL 7408230 (N.D. Cal. June 1, 2020)....................... 19

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Int'l Acad. of Bus. & Fin. Mgmt., Ltd. v. Mentz*,
 No. 12-cv-00463, 2013 WL 212640 (D. Colo. Jan. 18, 2013).....................19-20

*Irwin v. Jimmy John's Franchise, LLC*,
 175 F. Supp. 3d 1064 (C.D. Ill. 2016)................................................................ 16

*Jackson v. Loews Hotels, Inc.*,
 ED CV 18-827, 2019 WL 6721637 (C.D. Cal. July 24, 2019)....................17-18

*JNK Ent. v. SP Sales &Ent.*,
 CV 15-01908, 2015 WL 13283845 (C.D. Cal. Sept. 2, 2015)........................... 13

*Johnmohammadi v. Bloomingdale's, Inc.*,
 755 F.3d 1072 (9th Cir. 2014) ........................................................................... 14

*Johnson v. Bank of Am.*,
 No. 15-cv-6766, 2015 WL 7776808 (C.D. Cal. Nov. 30, 2015)........................ 20

*Kilgore v. KeyBank, Nat. Ass'n*,
 718 F.3d 1052 (9th Cir. 2013) ............................................................................. 9

*Krottner v. Starbucks Corp.*,
 406 F. App'x 129 (9th Cir. 2010).................................................................18-19

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) ............................................................................................ 8

*Martinez v. Nash Finch Co.*,
 886 F. Supp. 2d 1212 (D. Colo. 2012) .............................................................. 20

*Maynez v. Walmart, Inc.*,
 No. CV 20-0023, ---F. Supp. 3d----, 2020 WL 4882414 (C.D. Cal.
 Aug. 14, 2020)................................................................................................... 11

*Mazza v. Am. Honda Motor Co.*,
 666 F.3d 581 (9th Cir. 2012)............................................................................. 20

*Meyer v. Uber Technologies, Inc.*,
 868 F.3d 66 (2d Cir. 2017) .......................................................................... 10, 11

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

DEFENDANT FABFITFUN'S MEMO ISO MTC
ARBITRATION, OR, ALTERNATIVELY, TO DISMISS
CASE NO. 2:20-CV-09534-RGK-E

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Mitsubishi Motors v. Soler Chrysler-Plymouth,*
  473 U.S. 614 (1985) ................................................................................ 13

*Monster Energy Co. v. Olympic Eagle Distrib.,*
  No. ED CV 15-00819, 2015 WL 12781213 (C.D. Cal. Sept. 29,
  2015) ........................................................................................................ 13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
  460 U.S. 1 (1983) ................................................................................ 7, 14

*Navarro v. Block,*
  250 F.3d 729 (9th Cir. 2001) .................................................................... 8

*Nghiem v. Dick's Sporting Goods, Inc.,*
  No.: SACV 16-00097, 2016 WL 9131962 (C.D. Cal. July 5, 2016) ................ 10

*Padilla v. Yoo,*
  678 F.3d 748 (9th Cir. 2012) .................................................................... 8

*Pareto v. FDIC,*
  139 F.3d 696 (9th Cir. 1998) .................................................................... 8

*Peter v. DoorDash, Inc.,*
  445 F. Supp. 3d 580 (N.D. Cal. 2020) .................................................... 10

*Reddy v. Litton Indus., Inc.,*
  912 F.2d 291 (9th Cir. 1990) .................................................................... 9

*Sanchez v. Valencia Holding Co.,*
  61 Cal. 4th 899 (2015) ....................................................................... 11, 12

*Simula v. Autoliv,*
  175 F.3d 716 (9th Cir. 1999) .................................................................. 13

*Snow v. Eventbrite, Inc.,*
  No. 20-CV-03698, 2020 WL 6135990 (N.D. Cal. Oct. 19, 2020) .................... 11

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.,*
  903 F. Supp. 2d 942 (S.D. Cal. 2012) .................................................... 19

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

DEFENDANT FABFITFUN'S MEMO ISO MTC
ARBITRATION, OR, ALTERNATIVELY, TO DISMISS
CASE NO. 2:20-CV-09534-RGK-E

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Soto v. Royal Globe Ins. Co.*,
    184 Cal. App. 3d 420 (1986) ............................................................................. 19

*Sparling v. Hoffman Const. Co.*,
    864 F.2d 635 (9th Cir. 1988) ............................................................................. 14

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ................................................................................... 8, 15

*Stasi v. Inmediata Health Grp. Corp.*,
    No. 19cv2353, 2020 WL 2126317 (S.D. Cal. May 5, 2020) ............................ 16

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ........................................................................................... 15

*State ex rel. Suthers v. Mandatory Poster Agency, Inc.*,
    260 P.3d 9 (Colo. App. 2009) ............................................................................ 19

*Thomas v. Kimpton Hotel & Rest. Grp., LLC*,
    No. 19-CV-01860, 2020 WL 3544984 (N.D. Cal. June 30, 2020) ................... 20

*Underwriters Reinsurance Co. v. Ace Am. Ins. Co.*,
    No. CV0208177, 2003 WL 24011931 (C.D. Cal. Feb.10, 2003) ...................... 14

*Vasquez v. RSI Home Prods., Inc.*,
    No. 20-cv-01494, 2020 WL 6778772 (C.D. Cal. Nov. 12, 2020)........................ 7

*Warth v. Seldin*,
    422 U.S. 490 (1975) ............................................................................................. 8

*In re Zappos.com, Inc.*,
    108 F. Supp. 3d 949 (D. Nev. 2015), *rev'd on other grounds by*
    *Zappos*, 888 F.3d 1020 (9th Cir. 2018) .................................................. 15, 16, 18

**Statutes**

9 U.S.C. § 3 ................................................................................................... 7, 14

Colo. Rev. Stat. § 6-1-101, *et seq.* ............................................................ 6-7, 19, 20

Cooley LLP
Attorneys at Law
San Francisco

vi

Defendant FabFitFun's Memo ISO MTC
Arbitration, or, Alternatively, to Dismiss
Case no. 2:20-cv-09534-rgk-e

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Other Authorities**

Fed. R. Civ. P. 12................................................................................2, 8, 18

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vii

DEFENDANT FABFITFUN'S MEMO ISO MTC
ARBITRATION, OR, ALTERNATIVELY, TO DISMISS
CASE NO. 2:20-CV-09534-RGK-E

## I.   INTRODUCTION

This case arises from a data security incident (the "Incident") affecting the new member sign up pages of FabFitFun's website during the period between April 26, 2020 and May 14, 2020, and May 22, 2020 and August 3, 2020. Despite the existence of an arbitration agreement between FabFitFun and Plaintiff Cheryl Gaston, Plaintiff brought suit in this Court, alleging negligence and violation of the Colorado Consumer Protection Act based on the mere occurrence of the Incident, absent any specific allegations of insufficient data security practices, past harm, or prospective future harm. The parties' agreement requires that arbitration be compelled. Alternatively, the Complaint should be dismissed for failure to state a claim, as Plaintiff's claims suffer from numerous fatal defects.

*First*, the motion to compel arbitration should be granted because Plaintiff is subject to binding arbitration under the FabFitFun "Terms of Use and Sale" ("Terms"),[1] which require arbitration of Plaintiff's claims and bar class actions. When Plaintiff signed up as a FabFitFun member, she agreed to arbitrate "[a]ny claims arising out of, relating to, or connected with these Terms," Terms, Declaration of Christopher Henley ("Henley Decl."), Ex. B, ¶ 12.3, which cover "any dispute that has arisen or may arise between us relating in any way to your use of or access to the Services or Site, the Products, any breach, enforcement, or termination of these Terms, or otherwise relating to FabFitFun in any way." (*Id*. ¶ 12.) Plaintiff also agreed that "[t]he arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of these Terms." (*Id*. ¶ 12.3.) Accordingly, this matter should be sent to arbitration, where arbitrability is a question for the

---

[1] *See* Terms, Henley Decl., Ex. B, dated February 2, 2020. The Court may consider documents outside of the pleadings in deciding a motion to compel arbitration. *See, e.g., Garcia v. Trademark Constr. Co.*, No. 18-CV-1214, 2019 WL 1317329, at *3 (S.D. Cal. Mar. 22, 2019). FabFitFun relies on documents and evidence outside the pleadings and not subject to judicial notice only in support of its motion to arbitrate and not in support of its motion to dismiss.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFENDANT FABFITFUN'S MEMO ISO MTC
ARBITRATION, OR, ALTERNATIVELY, TO DISMISS
CASE NO. 2:20-CV-09534-RGK-E

arbitrator.

**Second**, although all of Plaintiff's claims are subject dismissal or stay pending arbitration, her claims also are subject to dismissal under Rule 12(b)(1) for lack of standing or harm. Plaintiff will not be able to establish that she or any other putative class member suffered any cognizable damages as a result of the Incident. Plaintiff does not allege that she had *any* actual cost, much less any unreimbursed cost, resulting from the alleged exposure of her payment card information. (Compl. ¶¶ 34-39.) To the contrary, Plaintiff immediately contacted her payment card company upon learning that her information may have potentially been exposed (almost certainly prompting the card to be cancelled) and alleges no harm beyond basic financial hygiene and other unquantifiable and de minimis theories that are insufficient to support standing. (*Id.*) Plaintiff also alleges no cognizable harm related to any potential exposure of her FabFitFun login credentials. Moreover, Plaintiff's allegations do not plausibly allege harm connected to the Incident, as opposed to some other widespread data breach. Thus, if for some reason arbitration is not compelled, Plaintiff's claims should be dismissed for lack of standing and inability to plead or prove harm.

**Third**, Plaintiff's claims are subject to dismissal under Rule 12(b)(6) for failure to state a claim for which relief may be granted. The Complaint is bereft of specific allegations of security failings by FabFitFun, instead recycling copy-and-paste allegations from prior actions (including where Salesforce allegedly played a part in a data incident—which has nothing to do with this case). (*Id.* ¶¶ 1, 26.) Plaintiff's conclusory allegations that FabFitFun breached various alleged duties are all premised on the following flawed reasoning: the Incident occurred, and thus FabFitFun must have breached a duty (even though no company, organization, or even government can have perfect security). To the contrary, FabFitFun took reasonable steps to secure its website—including using best-in-class, secure third parties such as Recurly and Stripe to process customer-requested payments.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANT FABFITFUN'S MEMO ISO MTC
ARBITRATION, OR, ALTERNATIVELY, TO DISMISS
CASE NO. 2:20-CV-09534-RGK-E

1  Nonetheless, it was exploited through a likely phishing attack, a danger present at the

2  largest, most sophisticated enterprises. FabFitFun then promptly addressed and

3  mitigated the risk to its customers—a risk that, at most, involved cancelable payment

4  cards (not personal information such as Social Security Numbers that could result in

5  identity theft). (*Id*. ¶ 2.) The facts alleged by Plaintiff simply do not state a claim

6  upon which relief may be granted.

7  **II.   STATEMENT OF FACTS**

8     **A.   FabFitFun.**

9     Defendant FabFitFun, Inc. ("FabFitFun"), founded in 2010, is a lifestyle

10  membership that is best known for the FabFitFun Box—a selection of products

11  delivered each season across beauty, fashion, fitness, wellness, home, and tech.

12  FabFitFun members generally subscribe to receive a FabFitFun Box on a seasonal

13  (quarterly) basis. (Compl. ¶ 1.) FabFitFun is based in Los Angeles and operates the

14  website fabfitfun.com. (*Id*.)

15    **B.   The Incident.**

16    In September 2020, FabFitFun disclosed to relevant state authorities and

17  potentially affected customers that it was the victim of a cybersecurity breach

18  involving the new member sign up pages of FabFitFun's website for a portion of that

19  year. (Compl. Ex. B at 29.) FabFitFun discovered a potential issue on August 3, 2020,

20  and an ensuing investigation conducted by both in-house and outside cybersecurity

21  experts indicated that an unauthorized third party inserted malicious code on portions

22  of FabFitFun's website that may have enabled the third party to capture certain

23  information in connection with new member sign ups during the identified dates. (*Id*.)

24  As a precaution (and in accordance with state data breach reporting requirements), in

25  September 2020, FabFitFun notified all customers who signed up for a new

26  subscription during the time periods at issue that certain information they provided

27  FabFitFun may have been accessed by unauthorized parties. (*Id*.)

28    Thereafter, through further investigation, FabFitFun was able to determine that

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFENDANT FABFITFUN'S MEMO ISO MTC
ARBITRATION, OR, ALTERNATIVELY, TO DISMISS
CASE NO. 2:20-CV-09534-RGK-E

only a smaller subset of the notified population was in fact potentially affected. Nevertheless, FabFitFun reset all customers' account passwords and offered all notified customers both a free year of identity protection services (including credit monitoring) and a $25 credit toward future FabFitFun purchases. (*Id.* at 30.) FabFitFun has implemented a number of additional security measures to buttress its reasonable, preexisting security regime, and to help prevent any future data security incidents. (*Id.*)

### C.    Plaintiff Gaston.

Plaintiff Cheryl Gaston is a Colorado resident who alleges that she signed up for a new FabFitFun subscription on May 7, 2020, using her debit card. (Compl. ¶ 12.) Plaintiff alleges the following non-cognizable or *de minimis* harms as a result of the Incident: loss of time due to everyday financial hygiene activities like contacting FabFitFun and her banks, exploring credit monitoring options that all online consumers should be aware of, and self-monitoring her accounts; the "anxiety" of "[k]nowing that the hacker stole her PII, and that her PII may be available for sale on the dark web"; the risk of unspecified "fraud, identity theft, and misuse resulting from her" cancelled card information and publicly available address information "being placed in the hands of criminals"; the lost value of her personal information (under an apparent theory that Plaintiff could otherwise sell her personal information to be used for fraudulent purposes); and the lost money paid for products purchased and received from FabFitFun that she would not have made if she had known that FabFitFun (like all websites) could possibly be subject to a data breach (and with no specifics about such purchases or the alleged bargained for value of the lacking security measures). (*Id.* ¶¶ 34-39.)

### D.    Plaintiff's Agreement to FabFitFun's Terms, Including Individual Arbitration.

In signing up for a FabFitFun subscription during the relevant period, Plaintiff Gaston agreed to binding arbitration with FabFitFun on an individual basis. The

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFENDANT FABFITFUN'S MEMO ISO MTC
ARBITRATION, OR, ALTERNATIVELY, TO DISMISS
CASE NO. 2:20-CV-09534-RGK-E

1   purchase flow she experienced clearly stated—next to a hyperlink to the Terms

2   containing the arbitration agreement—that "By clicking 'Order the Box' you are

3   agreeing to our Terms of Use and Sale . . . ." (Henley Decl. ¶ 5, Order Summary,

4   Henley Decl., Ex. A.)

5        As shown in Henley Decl. Ex. A, FabFitFun's "Terms of Use and Sale" are

6   unmistakably presented to customers via a hyperlink that is in an easily legible font

7   color and size, as well as in a font type with underlining that is generally recognizable

8   as a hyperlink. (Henley Decl. ¶ 6, Order Summary, Henley Decl., Ex. A.) The

9   hyperlink to the Terms appears right above the "ORDER THE BOX" button that

10   customers must click to sign up for a subscription on FabFitFun's website. (Henley

11   Decl. ¶ 5, Order Summary, Henley Decl., Ex. A.)

12       In turn, FabFitFun's Terms in force during the period Plaintiff signed up for a

13   new subscription clearly state that "BY ACCESSING OR USING ANY PART OF

14   THE SITE OR SERVICES, YOU AGREE THAT YOU HAVE READ,

15   UNDERSTOOD AND AGREED TO BE BOUND BY THESE TERMS, WHICH

16   CONTAIN AN ARBITRATION AGREEMENT, A WAIVER OF CLASS-ACTION

17   RIGHTS, AND LIABILITY LIMITATIONS." (Compl. ¶ 12; Terms, Henley Decl.,

18   Ex. B at Introduction (emphasis in original).) The Terms pertain to "any dispute that

19   has arisen or may arise between us relating in any way to your use of or access to the

20   Services or Site, the Products, any breach, enforcement, or termination of these

21   Terms, or otherwise relating to FabFitFun in any way" and provide that "[a]ny claims

22   arising out of, relating to, or connected with these Terms must be asserted

23   individually in binding arbitration administered by the American Arbitration

24   Association ("AAA") in accordance with its Consumer Arbitration Rules." (Terms,

25   Henley Decl., Ex. B, ¶¶ 12, 12.3.) The "arbitrator shall not conduct any form of class

26   or collective arbitration nor join or consolidate claims by or for individuals," and

27   "[t]he arbitrator, and not any federal, state, or local court or agency, shall have

28   exclusive authority to resolve any dispute relating to the interpretation, applicability,

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFENDANT FABFITFUN'S MEMO ISO MTC
ARBITRATION, OR, ALTERNATIVELY, TO DISMISS
CASE NO. 2:20-CV-09534-RGK-E

enforceability or formation of these Terms, including, any claim that all or any part of these Terms is void or voidable or a particular claim is subject to arbitration." (*Id.* ¶ 12.3.) Beyond allowing parties the option of proceeding in small claims court if such jurisdiction exists (*id.* ¶ 12.5), the Terms "IRREVOCABLY WAIVE ANY RIGHT . . . TO A COURT TRIAL. . . . OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT, ARBITRATION OR OTHER PROCEEDING FILED AGAINST US." (*Id.* ¶ 12.11 (emphasis in original).)

Plaintiff had the option "TO REJECT THE AGREEMENT TO ARBITRATE PROVISION ('OPT-OUT')" for 30 days after first accepting the Terms, (*id.* ¶ 12.9 (emphasis in original)), but chose not to do so.

### E.    The Complaint's Conclusory Allegations.

The Complaint's allegations are centered on the conclusory theory that the simple occurrence of the Incident support causes of action for common law negligence (Compl. ¶¶ 55-67), declaratory judgment (*id.* ¶¶ 68-74), and violations of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.* (*id.* ¶¶ 75-86).

With respect to her declaratory judgment claim, Plaintiff simultaneously alleges that FabFitFun "continu[es] to review and enhance [its] security measures" while also alleging that "[t]here is no reason to believe that Defendant's security measures are any more adequate than they were before the breach to meet Defendant's contractual obligations and legal duties . . . ." (*Id.* ¶¶ 71, 83.) Plaintiff alleges no specific data security failures, either before or after the Incident.

For her negligence claim, Plaintiff cites no viable standard of care, but instead cites Federal Trade Commission guidance that does not support a private right of action and Payment Card Industry Data Security Standard ("PCI DSS") standards that do not apply to FabFitFun because it uses outside payment processors. (*Id.* ¶¶ 57-59, 63.)

Plaintiff's final claim is a violation of the Colorado Consumer Protection Act

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFENDANT FABFITFUN'S MEMO ISO MTC
ARBITRATION, OR, ALTERNATIVELY, TO DISMISS
CASE NO. 2:20-CV-09534-RGK-E

on behalf of Plaintiff and a Colorado subclass, for which she simply copies and pastes the elements of such a claim without connecting them to any alleged conduct by FabFitFun. (*Id.* ¶¶ 79-85.) For example, she summarily accuses FabFitFun of "[k]nowingly making a false representation as to the characteristics of services" and "intend[ing] to mislead Plaintiff and Colorado Subclass members and induce them to rely on its misrepresentations and omissions," without any supporting factual allegations. (*Id.* ¶¶ 79, 82.)

## III.   LEGAL STANDARDS

*Motion to Compel Arbitration.* The Federal Arbitration Act (the "FAA") requires a court to stay judicial proceedings and compel arbitration of claims covered by an enforceable arbitration agreement. 9 U.S.C. § 3 ("If any suit or proceeding be brought . . . upon any issue referable to arbitration . . . the court in which such suit is pending . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]"). Courts routinely apply the "liberal federal policy favoring arbitration" when assessing motions to compel like this one. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation omitted); *see also Vasquez v. RSI Home Prods., Inc.*, No. 20-cv-01494, 2020 WL 6778772, at *13 (C.D. Cal. Nov. 12, 2020) ("the FAA reflects a 'liberal federal policy favoring arbitration'" (quoting *AT&T Mobility* 563 U.S. at 339)). Moreover, "[j]ust as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, [where] the problem at hand is the construction of the contract language itself . . . ."). Particularly in cases like this, where the parties have "clearly and unmistakably" agreed to have issues of arbitrability decided by the arbitrator, courts should compel arbitration even

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFENDANT FABFITFUN'S MEMO ISO MTC
ARBITRATION, OR, ALTERNATIVELY, TO DISMISS
CASE NO. 2:20-CV-09534-RGK-E

if questions arise about the scope of the parties' agreement. *See Capelli Enters., Inc. v. Fantastic Sams Salons Corp.*, No. 16-cv-03401, 2017 WL 130284, at *2-4 (N.D. Cal. Jan. 13, 2017) (compelling arbitration of the question of arbitrability where the parties agreed to submit that question to the arbitrator).

***Motion to Dismiss for Lack of Standing***. Rule 12(b)(1) provides for dismissal of an action for "lack of subject matter jurisdiction." *See* Fed. R. Civ. P. 12(b)(1). As part of establishing subject matter jurisdiction, a plaintiff must satisfy the "irreducible constitutional minimum" of Article III standing, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), and show that she "has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical," *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 180 (2000). The "injury in fact" must be "particularized," meaning that it affects a plaintiff "in a personal and individual way," and "concrete," in that it must actually exist and not be "abstract." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citations omitted). Where a case is at the pleading stage, the plaintiff must "clearly" "allege facts" demonstrating each element. *Warth v. Seldin*, 422 U.S. 490, 518 (1975). Plaintiffs bear the burden of alleging facts sufficient to establish standing; if they fail to do so, dismissal must follow. *See Lujan*, 504 U.S. at 560-61.

***Motion to Dismiss for Failure to State a Claim***. For a Rule 12(b)(6) motion, "all well-pleaded allegations of material fact [are accepted as true] and construe[d] . . . in the light most favorable to the non-moving party." *Padilla v. Yoo*, 678 F.3d 748, 757 (9th Cir. 2012) (citation omitted). "[C]onclusory allegations of law and unwarranted inferences" are insufficient. *Associated Gen. Contractors v. Metro. Water Dist.*, 159 F.3d 1178, 1181 (9th Cir. 1998) (*citing Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998)). A court must dismiss claims where "there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (citation omitted). "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFENDANT FABFITFUN'S MEMO ISO MTC
ARBITRATION, OR, ALTERNATIVELY, TO DISMISS
CASE NO. 2:20-CV-09534-RGK-E

action" are not sufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Where amendment would be futile, the court should dismiss with prejudice. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990).

## IV. THE MOTION TO COMPEL ARBITRATION SHOULD BE GRANTED.

FabFitFun's arbitration clause and assent mechanism is of the type that courts in this District, including this Court, regularly enforce. FabFitFun's motion to compel arbitration on an individual basis therefore should be granted and this case dismissed.

### A. The Relevant Inquiry Under the FAA.

Under the Federal Arbitration Act ("FAA"), the court's role in adjudicating a motion to compel arbitration is "to determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (citation omitted). If both requirements are met, then the court "*shall* direct the parties to proceed to arbitration." *Id.* (emphasis in original).

The first inquiry is made by the court, and the second (arbitrability) can be delegated to an arbitrator. *Henry Schein*, 139 S. Ct. at 530 (explaining that "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists[,]" but "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue"). Here, FabFitFun's Terms delegate arbitrability to the arbitrator, as discussed below, and thus the Court's role is limited to determining whether a valid agreement to arbitrate exists.

### B. A Valid Arbitration Agreement Exists Between Plaintiff and FabFitFun.

A valid arbitration agreement exists if two conditions exist: assent and a lack of unconscionability. *See Crypto Asset Fund, LLC v. MedCredits, Inc.*, No. 19CV1869, 2020 WL 1506220, at *4 (S.D. Cal. Mar. 30, 2020) (assessing contract formation and unconscionability before enforcing an arbitration clause). Again, both

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFENDANT FABFITFUN'S MEMO ISO MTC
ARBITRATION, OR, ALTERNATIVELY, TO DISMISS
CASE NO. 2:20-CV-09534-RGK-E

conditions exist and thus the arbitration agreement between Plaintiff and FabFitFun is valid.

### 1.     Plaintiff Assented to the Agreement.

Plaintiff assented to FabFitFun's arbitration agreement when she made a purchase on the FabFitFun website. Online agreements are enforceable when they put a "website user on actual or inquiry notice of [their] terms." *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 585 (N.D. Cal. 2020). That is plainly the case here: FabFitFun's Terms containing the arbitration agreement are clearly presented to customers before they make a purchase, via a hyperlink appearing right above the button that customers must click to sign up for a subscription on FabFitFun's website. *See supra* Section II.D. The link to the Terms has a clearly readable font color and size, as well as a font type with underlining that is generally recognizable as a hyperlink. *See id.*

The Complaint asserts that FabFitFun "customers are not required to read or check a box acknowledging having reviewed the 'Terms of Use' to make a purchase" (Compl. ¶ 20), but that is not the test for assent to terms of use in this Circuit. Rather, assent is found where—as here—there is a conspicuous link to terms of use next to a button requiring action for purchase. *See Nghiem v. Dick's Sporting Goods, Inc.*, No. SACV 16-00097, 2016 WL 9131962, at *3 (C.D. Cal. July 5, 2016) (finding that terms "may bind a consumer . . . when a website 'puts a reasonably prudent user on inquiry notice of the terms of the contract.'") (citation omitted).

The analysis in *Meyer v. Uber Technologies, Inc.* is instructive. There, the court—applying California law—concluded that Uber's interface provided sufficient notice for assent, highlighting such factors as: (i) the link to the terms appearing near the button which visitors clicked on to agree to the terms; (ii) the screen not being cluttered; (iii) the terms of use link text being in a different color than the background and differentiated from the non-hyperlinked text; (iv) the entire screen being visible at once such that the user did not need to scroll to find notice of the terms of use; and

Cooley LLP
Attorneys at Law
San Francisco

10

Defendant FabFitFun's Memo ISO MTC
Arbitration, or, Alternatively, to Dismiss
Case No. 2:20-cv-09534-rgk-e

(v) the website language being "a clear prompt directing users to read the Terms and Conditions and signaling that their acceptance of the benefit of registration would be subject to contractual terms." 868 F.3d 66, 78-79 (2d Cir. 2017);[2] *see also Snow v. Eventbrite, Inc.*, No. 20-CV-03698, 2020 WL 6135990, at *7 (N.D. Cal. Oct. 19, 2020) (evaluating similar factors to find assent); *Maynez v. Walmart, Inc.*, No. CV 20-0023, ---F. Supp. 3d----, 2020 WL 4882414, at *3 & n.2 (C.D. Cal. Aug. 14, 2020) (same); *Dickey v. Ticketmaster LLC*, No. CV 18-9052, 2019 WL 9096443, at *7 & n.4 (C.D. Cal. Mar. 12, 2019) (same).

Like these cases finding assent, FabFitFun's Terms were hyperlinked in a manner that was readily recognizable and in close proximity to the button that Plaintiff selected in making a purchase, and the website contained a "clear prompt" directing customers to review the underlying agreement. *See supra* Section II.D. Assent therefore exists.

### 2. The Agreement is Not Unconscionable.

Second, the arbitration agreement is neither procedurally nor substantively unconscionable. "[P]rocedural and substantive unconscionability must *both* be present" to permit a court "to refuse to enforce a contract." *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 910 (2015) (emphasis in original) (citation omitted). Plaintiff cannot meet this burden.

"Procedural unconscionability relates to the manner in which the contract was negotiated, focusing on 'oppression or surprise due to unequal bargaining power.'" *Dupler v. Orbitz, LLC*, No. CV 18-2303, 2018 WL 6038309, at *4 (C.D. Cal. July 5, 2018) (quoting *Baltazar v. Forever 21*, Inc., 62 Cal.4th 1237, 1243 (2016)). FabFitFun's arbitration agreement is procedurally fair—it is prominently featured in plain English throughout the Terms, including in all caps at the start of the Terms,

---

[2] A visual comparison between Uber and FabFitFun's acceptance flows reveals that FabFitFun's sign-up screen provides even more conspicuous notice than in *Meyer* of the fact that, by clicking the button on the screen, the user is agreeing to hyperlinked terms. *Compare Meyer*, 868 F.3d at 81, *with supra* Henley Decl., Ex. A (Order Summary).

Cooley LLP
Attorneys at Law
San Francisco

11

Defendant FabFitFun's Memo ISO MTC
Arbitration, or, Alternatively, to Dismiss
Case no. 2:20-cv-09534-RGK-E

provides an opt-out, and is for online shopping, which is a market with many alternate options. There was no surprise and the fact that the Terms were presented on a "take it or leave it basis" is not sufficient "oppression" to deem a contract unconscionable. *Dupler*, 2018 WL 6038309, at *4.

"An agreement is substantively unconscionable when the terms of the agreement are 'overly harsh or one-sided.'" *Id.* (quoting *Sanchez* 61 Cal. 4th at 910-11). FabFitFun's arbitration clause is also substantively fair—it applies to actions brought by either party and is subject to AAA rules, which generally require both parties to contribute equally to arbitration, although FabFitFun goes even further in offering to reimburse arbitration fees in certain circumstances. It also allows the parties to proceed in small claims court if such jurisdiction exists. Because assent exists and the contract is not unconscionable, the arbitration agreement is valid.

### C.    Arbitrability Is for the Arbitrator to Decide, But in Any Case, The Claims in the Complaint are Arbitrable.

Once the Court determines that a valid arbitration agreement exists, it should compel arbitration because arbitrability—whether Plaintiff's claims fall within the arbitration agreement—is a question for the arbitrator to decide. That is because the Terms clearly delegate the question of arbitrability to the arbitrator, both in expressly reserving that question for arbitration and in adopting AAA rules to govern the proceedings. (Terms, Henley Decl., Ex. B, ¶ 12.3 ("The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of these Terms . . . ."); *id.* (adopting AAA rules).) U.S. Supreme Court precedent makes clear that "a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein*, 139 S. Ct. at 530. Further, where "a signed arbitration agreement includes a reference to specific arbitration rules—*e.g.*, AAA, JAMS, etc.—the Ninth Circuit has held that the parties agreed to delegate arbitrability itself to the arbitrator." *Caviani v. Mentor Graphics Corp.*, No. 19-cv-01645, 2019

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFENDANT FABFITFUN'S MEMO ISO MTC
ARBITRATION, OR, ALTERNATIVELY, TO DISMISS
CASE NO. 2:20-CV-09534-RGK-E

1  WL 4470820, at *4 (N.D. Cal. Sept. 18, 2019); *see Brennan v. Opus Bank*, 796 F.3d

2  1125, 1130 (9th Cir. 2015) (incorporation of AAA rules into an arbitration provision

3  "constitute[d] 'clear and unmistakable' evidence that the parties intended to delegate

4  the arbitrability question to an arbitrator" in and of itself).

5      In any case, even if the Court were to assess the arbitrability of Plaintiff's

6  claims (and it should not), the FabFitFun's arbitration clause clearly covers the

7  disputes at issue. The Terms require Plaintiff to arbitrate "[a]ny claims arising out of,

8  relating to, or connected with these Terms," which in turn cover "any dispute that has

9  arisen or may arise between us relating in any way to your use of or access to the

10  Services or Site, the Products, any breach, enforcement, or termination of these

11  Terms, or otherwise relating to FabFitFun in any way." *See supra* Section II.D. Such

12  language creates a binding agreement to arbitrate a broad range of disputes, including

13  the declaratory judgment, negligence, and consumer protection claims at issue here.

14  *Cronin v. Monex Deposit Co.*, No. SACV 08-1297, 2009 WL 412023, at *5 (C.D.

15  Cal. Feb. 17, 2009) (describing an arbitration agreement with "arising out of" and

16  "relating to" language as "extremely broad"); *see generally Monster Energy Co. v.

17  Olympic Eagle Distrib.*, No. ED CV 15-00819, 2015 WL 12781213, at *5 (C.D. Cal.

18  Sept. 29, 2015) (holding that an arbitration clause that stated "[a]ny dispute,

19  controversy or claim arising out of or relating to this Agreement . . . shall be settled

20  by binding arbitration" was sufficient to compel arbitration of consumer protection

21  claims); *JNK Ent. v. SP Sales & Ent.*, CV 15-01908, 2015 WL 13283845, at *3 (C.D.

22  Cal. Sept. 2, 2015) (when deciding if an "arbitration clause encompasses the claims,

23  at issue, 'all doubts are to be resolved in favor of arbitrability'" (quoting *Simula v.

24  Autoliv*, 175 F.3d 716, 721 (9th Cir. 1999))); *Simula*, 175 F.3d at 721 (holding that

25  claims "need only 'touch matters' covered by the contract containing the arbitration

26  clause" to be compelled into arbitration (quoting *Mitsubishi Motors v. Soler

27  Chrysler-Plymouth*, 473 U.S. 614, 624 n.13 (1985))).

28      To rebut such an inclusive arbitration clause "[p]laintiffs must provide

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFENDANT FABFITFUN'S MEMO ISO MTC
ARBITRATION, OR, ALTERNATIVELY, TO DISMISS
CASE NO. 2:20-CV-09534-RGK-E

'forceful evidence' of intent to exclude claims related to data breaches from the arbitration agreement." *Dupler*, 2018 WL 6038309, at *3 (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)). No such evidence exists.

Because the arbitration provision is valid, dismissal of this entire action is appropriate. Where, as here, "an arbitration clause is broad enough to cover all of a plaintiff's claims, the court may compel arbitration and dismiss the action." *Hopkins & Carley, ALC v. Thomson Elite*, No. 10-CV-05806, 2011 WL 1327359, at *8 (N.D. Cal. Apr. 6, 2011); *see also Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988); *Dittenhafer v. Citigroup*, No. C 10–1779, 2010 WL 3063127, at *7 (N.D. Cal. Aug. 2, 2010) (compelling arbitration and dismissing case); *Underwriters Reinsurance Co. v. Ace Am. Ins. Co.*, No. CV0208177, 2003 WL 24011931, at *7-8 (C.D. Cal. Feb. 10, 2003) (same). Moreover, the Parties agreed that the "Federal Arbitration Act "applies in all cases and governs the interpretation and enforcement of the arbitration rules and arbitration proceedings," the "clear intent" of which is "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." (Terms, Henley Decl. Ex. B, ¶ 12.3); *Moses H. Cone*, 460 U.S. at 22.

### D.    The Complaint Should Be Dismissed, Or At Least Stayed Pending Arbitration.

Because an enforceable arbitration exists, the Court should dismiss this action in its entirety. *See Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073-74 (9th Cir. 2014) ("[A] district court may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration."). At a minimum, the Court should compel arbitration and stay these proceedings pending the arbitrator's determination. That is because when a matter is "referable to arbitration," the FAA imposes a mandatory stay as to litigation between the parties required to arbitrate. 9 U.S.C. § 3; *see also Anderson v. Pitney Bowes, Inc.*, No. C 04-4808, 2005 WL 1048700, at *6 (N.D. Cal. May 4, 2005) ("If

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFENDANT FABFITFUN'S MEMO ISO MTC
ARBITRATION, OR, ALTERNATIVELY, TO DISMISS
CASE NO. 2:20-CV-09534-RGK-E

the issues in a case are within the reach of the Agreement, the district court has no discretion under section 3 [of the FAA] to deny the stay." (citation omitted)).

## V.   ALTERNATIVELY, PLAINTIFF'S CLAIMS ARE SUBJECT TO DISMISSAL

Although FabFitFun's motion to compel arbitration should dispose of this matter, Plaintiff's claims are also subject to dismissal for lack of standing and failure to state a claim upon which relief can be granted.

### A.   Plaintiff Lacks Article III Standing.

The Complaint does not satisfy Plaintiff's burden to satisfy the requirements for Article III standing. As a nonmovant, Plaintiff bears the burden of establishing standing, *see, e.g., In re Adobe Systems, Inc. Privacy Litigation*, 66 F. Supp. 3d 1197, 1208 (N.D. Cal. 2014), and she does not. To plead standing, Plaintiff must allege facts showing "injury in fact," *Spokeo*, 136 S. Ct. at 1547, a standard requiring Plaintiff to "show that . . . she suffered an invasion of a legally protected interest that is concrete and particularized" from the alleged violation, and that the defendant's actions "affect[ed] the plaintiff in a personal and individual way." *Id.* at 1548 (citation omitted). A plaintiff threatened with future injury has standing to sue only "if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 & n.5 (2013)).

### 1.   No Standing Based on Risk of Fraud or Identity Theft.

Plaintiff alleges that there is some future risk that her personal information will be exploited and subject to fraud, but these allegations fail to establish standing. In seeking to show standing on this theory, Plaintiff may cite *In re Zappos.com, Inc.*, 888 F.3d 1020 (9th Cir. 2018), in which the Ninth Circuit set forth standards for determining standing in a data breach case. *Zappos* does not support standing here. Under *Zappos*, courts must assess the totality of the allegedly exposed information to determine whether there is a substantial risk that harm will occur; under *Zappos* created disclosure of credit card information alone is not sufficient to establish an

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFENDANT FABFITFUN'S MEMO ISO MTC
ARBITRATION, OR, ALTERNATIVELY, TO DISMISS
CASE NO. 2:20-CV-09534-RGK-E

injury-in-fact. Indeed, courts in this District and across the country have held post-*Zappos* that payment card information is ***not*** enough to establish Article III standing where—as here—Plaintiff has cancelled the allegedly affected cards. *See, e.g., Stasi v. Inmediata Health Grp. Corp.*, No. 19cv2353, 2020 WL 2126317, at *5 (S.D. Cal. May 5, 2020) (holding that Article III standing requirements were not met when a data breach did not allegedly expose "information . . . of the type 'needed to open accounts or spend money in the plaintiffs' names'" (quoting *Zappos*, 888 F.3d at 1026)); *Ables v. Brooks Bros. Grp., Inc.*, No. CV 17-4309, 2018 WL 8806667, at *5 (C.D. Cal. June 7, 2018) ("[C]ancellation of the compromised credit and debit card accounts extinguished any concrete risk of future identity theft . . . ."); *Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1073-74 (C.D. Ill. 2016) (future risk of identity theft after payment card information was allegedly exposed and cards were cancelled held to be "conjectural or hypothetical" and insufficient "to pose a risk that is certainly impending, or presents a substantial risk of future harm"); *Engl v. Nat. Grocers by Vitamin Cottage, Inc.*, No. 15-cv-02129, 2016 WL 8578252, at *6 (D. Colo. Sept. 21, 2016) ("Once the card was cancelled, its number, expiration date and security code were rendered useless, and consequently there is no risk that [the plaintiff] will be held responsible for future fraudulent purchases made using them.").

Further, the information that was allegedly exposed in *Zappos*, which made identity theft more likely, extended beyond payment card information to include names, account numbers, and billing and shipping addresses—which, with the exception of customers' names, are not at issue here. (Compl. Ex. B at 29; Order Summary, Henley Decl., Ex. A.) Moreover, website log-in information that does not lead to access to more sensitive information, such as alleged here, is even less likely to meet the requisite standing requirements as it is even further removed from any potential future harm. This is particularly true given that FabFitFun promptly reset all customer passwords. (Compl. Ex. B at 29.)

In the limited instances where information not sufficient to open accounts or

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEFENDANT FABFITFUN'S MEMO ISO MTC
ARBITRATION, OR, ALTERNATIVELY, TO DISMISS
CASE NO. 2:20-CV-09534-RGK-E

spend money was held to confer Article III standing, plaintiffs alleged that significant identity theft had occurred, including creation of fake accounts and harassment. *See e.g., Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1034 (N.D. Cal. 2019); *Corona v. Sony Pictures Ent., Inc.*, No. 14-cv-09600, 2015 WL 3916744, at *3 (C.D. Cal. June 15, 2015) (holding that PII stolen and posted on file-sharing websites coupled with claims that the information was then used to send emails threatening physical harm to employees and their families provided standing). None of these circumstances exist here: Plaintiff does not allege payment card fraud or that the information allegedly exposed could be used to open accounts or spend money in her name.

### 2.   No Standing Based On Other Claimed Harms.

Beyond her vague allegations of future fraud risk that are insufficient to satisfy Article III, Plaintiff asserts various other theories of purported harm, none of which satisfies Article III.

First, Plaintiff claims a loss of time based on conducting everyday financial hygiene activities like contacting FabFitFun and banks, exploring credit monitoring options, and self-monitoring accounts. (Compl. ¶ 34.) This claim fails based on the four corners of the Complaint, as Plaintiff concedes that she "reviewed her credit reports and other financial statements routinely," (*id*. ¶ 41), so the alleged account and credit report monitoring was not caused by the Incident.

Second, Plaintiff claims to have paid money for products purchased and received from FabFitFun that she would not have made would she have known that FabFitFun, like all websites, could possibly by subject to a data breach. (*Id*. ¶ 37.) A "benefit of the bargain" theory such as this is insufficient to support standing in data breach cases, especially where, as here, it is based on such conclusory allegations of an implied promise to earmark a portion of the purchase price of FabFitFun products for ensuring data safety. Indeed, case law "require[s] much more precise allegations and more explicit promises." *Jackson v. Loews Hotels, Inc.*, ED CV 18-827, 2019

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEFENDANT FABFITFUN'S MEMO ISO MTC
ARBITRATION, OR, ALTERNATIVELY, TO DISMISS
CASE NO. 2:20-CV-09534-RGK-E

WL 6721637, at *2 (C.D. Cal. July 24, 2019); *see also In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 962 n.5 (D. Nev. 2015) (dismissed on standing in part because they did not "allege facts showing how the price they paid for such goods incorporated some particular sum that was understood by both parties to be allocated towards the protection of customer data"), *rev'd on other grounds by Zappos*, 888 F.3d at 1027–30 & n.15.

Third, Plaintiff alleges anxiety from alleged data theft. But claimed harm based on the "anxiety" of "[k]nowing that the hacker stole her PII, and that her PII may be available for sale on the dark web" (Compl. ¶ 35) is far too speculative to be cognizable.

Finally, Plaintiff alleges lost value of the information allegedly taken by bad actors. (*Id.* ¶ 36.) But this claim, which would depend on Plaintiff herself being able otherwise to profit from selling her personal information, is non-actionable and contrary to the clean hands doctrine, among other things.

**B.      Plaintiff Fails to State a Claim Upon Which Relief May Be Granted.**

Even if Plaintiff could establish Article III standing, her claims would still be subject to dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

**1.      Plaintiff Fails to Allege Proximately Caused Harm for Any Claim.**

With respect to Plaintiff's negligence claim, other than merely repeatedly asserting that Plaintiff suffered some injury that "was a direct and proximate cause" of FabFitFun's actions, (*id.* ¶ 67, 80, 85), Plaintiff fails to allege any facts indicating that FabFitFun proximately caused any of her alleged damages. This is fatal to her negligence claim. *See Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010), (holding that plaintiffs failed to state a negligence claim because, under the relevant law, "[t]he mere danger of future harm, unaccompanied by present damage, will not support a negligence action."); *Corona*, 2015 WL 3916744, at *4 (dismissing

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

DEFENDANT FABFITFUN'S MEMO ISO MTC
ARBITRATION, OR, ALTERNATIVELY, TO DISMISS
CASE NO. 2:20-CV-09534-RGK-E

data breach negligence claims because, "alleg[ations] [of] future harm or an increased risk in harm that has not yet occurred. . . . do not support a claim for negligence, as they fail to allege a cognizable injury," "general allegations of lost time are too speculative to constitute cognizable injury," and "alleged injur[ies] [that] rel[y] on a theory that [] PII constitutes property. . . . also fail. . . ."). Moreover, "emotional distress damages are not recoverable for garden-variety negligence." *Huynh v. Quora, Inc.*, No. 18-cv-07597, 2020 WL 7408230, at \*5 (N.D. Cal. June 1, 2020); *see also Andre v. Superior Ct.*, 2 Cal. App. 4th 11, 20 n.9 (1991) ("We note that this court has previously held that emotional distress damages are not recoverable in a 'garden-variety negligence concepts' case." (quoting *Soto v. Royal Globe Ins. Co.*, 184 Cal. App. 3d 420, 434 (1986))). And "'without specific factual statements that Plaintiffs' Personal Information has been misused, in the form of an open bank account, or un-reimbursed charges, the mere danger of future harm, unaccompanied by present damage, will not support a negligence action.'" *Huynh*, 2020 WL 7408230, at \*6 (quoting *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 951 (S.D. Cal. 2012)).

The same is true for Plaintiff's Colorado Consumer Protection Act claim, which should fail, among other reasons, because she does not plead actual damages—a required element that must be pled with particularity as if sounding in fraud. *See State ex rel. Suthers v. Mandatory Poster Agency, Inc.*, 260 P.3d 9, 13 (Colo. App. 2009). Also required for Colorado Consumer Protection Act claims are that a defendant "knowingly makes a false representation" and the false representation must either induce a party to act, refrain from acting, or have the capacity or tendency to attract consumers—elements not met by Plaintiff's conclusory allegations that FabFitFun failed to provide reasonable security. (*See* Compl. ¶¶ 28, 62, 83); *Int'l Acad. of Bus. & Fin. Mgmt., Ltd. v. Mentz*, No. 12-cv-00463, 2013 WL 212640, at \*6 (D. Colo. Jan. 18, 2013) (outlining elements of a Colorado Consumer Protection Act claim). It should also be noted that the Colorado Consumer Protection Act

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

DEFENDANT FABFITFUN'S MEMO ISO MTC
ARBITRATION, OR, ALTERNATIVELY, TO DISMISS
CASE NO. 2:20-CV-09534-RGK-E

specifically disallows statutory damages for class actions, negating Plaintiff's claim for such damages. (Compl. ¶ 86, Prayer for Relief.) *See* Colo. Rev. Stat. § 6–1–113(2) ("**Except in a class action**[,]. . . any person who, in a private civil action, is found to have [violated the Colorado Consumer Protection Act] shall be liable" for statutory damages of $500.) (emphasis added); *Martinez v. Nash Finch Co.*, 886 F. Supp. 2d 1212, 1218 (D. Colo. 2012) (same).

Finally, Plaintiff's declaratory judgment claim is insufficient to establish a material dispute regarding prospective harm, as Plaintiff fails to allege any specific data security failures, instead relying on the occurrence of the Incident as the only support for her claim.

### 2.    Plaintiff Fails to Plead a Cognizable Liability Theory.

Plaintiffs' liability theories fail for other reasons, including that the claimed standards of care—the FTC Act, (Compl. ¶¶ 58, 80), and PCI-DSS data security standards, Compl. ¶ 63—are not cognizable. *See, e.g., Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 592 (9th Cir. 2012) ("[T]here is no private right of action under the Federal Trade Commission Act . . . ." (citing *Holloway v. Bristol-Meyers Corp.*, 485 F.2d 986, 997 (D.C. Cir. 1973))); *Johnson v. Bank of Am.*, No. 15-cv-6766, 2015 WL 7776808, at *4 (C.D. Cal. Nov. 30, 2015) ("[T]he FTC Act does not recognize a private right of action."); *Thomas v. Kimpton Hotel & Rest. Grp., LLC*, No. 19-CV-01860, 2020 WL 3544984, at *3 (N.D. Cal. June 30, 2020) (holding that PCI-DSS standards are based in contract and, even if applicable, do not confers "rights" on end users). In short, none of Plaintiff's allegations state a claim upon which relief may be granted.

### VI.    CONCLUSION

For the reasons above, the Court should compel arbitration and dismiss the proceedings, or in the alternative, stay the proceedings until the completion of arbitration. If the Court does not compel arbitration it should dismiss the Complaint.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT FABFITFUN'S MEMO ISO MTC
ARBITRATION, OR, ALTERNATIVELY, TO DISMISS
CASE NO. 2:20-cv-09534-RGK-E

1    Dated:        January 20, 2021                     COOLEY LLP
2                                                       KATHLEEN HARTNETT (314267)
                                                        TRAVIS LEBLANC (194463)
3                                                       CHARLES A. WOOD (310702)
                                                        JOE MORNIN (307766)
4
5                                                       */s/ Kathleen Hartnett*
                                                        Attorneys for Defendant
6                                                       FABFITFUN, INC.
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

DEFENDANT FABFITFUN'S MEMO ISO MTC
ARBITRATION, OR, ALTERNATIVELY, TO DISMISS
CASE NO. 2:20-CV-09534-RGK-E