BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. BYRD (190634)
byrd@whafh.com
MARISA C. LIVESAY (223247)
livesay@whafh.com
BRITTANY N. DEJONG (258766)
dejong@whafh.com
**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile:  619/234-4599

M. ANDERSON BERRY (262879)
aberry@justice4you.com
LESLIE GUILLON (222400)
lguillon@justice4you.com
**CLAYEO C. ARNOLD,
  A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 777-7777
Facsimile: (916) 924-1829

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERYL GASTON and RENATE GARRISON, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>FABFITFUN, INC.,<br><br>        Defendant. | Case No. 2:20-cv-09534-RGK-E<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>DATE:         March 22, 2021<br>TIME:         9:00 a.m.<br>COURTROOM:  850, 8th Floor<br>JUDGE:      Hon. R. Gary Klausner |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................1

II.   STATEMENT OF FACTS .........................................................................2

III.  PROCEDURAL HISTORY ........................................................................3

IV.   THE SETTLEMENT TERMS ....................................................................4

    A.   Proposed Settlement Class ...............................................................4

    B.   The Settlement Fund .........................................................................4

    C.   Injunctive Relief ...............................................................................6

    D.   Class Notice and Settlement Administration.....................................7

    E.   Attorneys' Fees and Expenses ..........................................................8

    F.   Service Awards to Named Plaintiffs .................................................8

    G.   Release ..............................................................................................9

V.    ARGUMENT ...........................................................................................10

    A.   The Court Should Certify the Class for Settlement Purposes ..............10

        1.   The Rule 23(a) Requirements Are Met for Purposes of
Settlement ...............................................................................10

        2.   The Requirements of Rule 23(b) Are Met for Purposes of
Settlement ...............................................................................11

    B.   The Settlement Should Be Preliminarily Approved ............................12

        1.   The Strength of Plaintiffs' Case .......................................13

        2.   The Risk, Expense, Complexity, and Likely Duration of Further
Litigation ...............................................................................14

        3.   The Risk of Maintaining Class Action Status Through Trial............15

        4.   The Amount Offered in Settlement .................................15

        5.   The Extent of Discovery Completed and the Stage of Proceedings .17

        6.   The Experience and Views of Counsel ............................18

        7.   The Reaction of the Class Members to the Proposed Settlement .....18

        8.   Lack of Collusion Among the Parties ...............................18

    C.   The Court Should Approve the Proposed Notice Program .................18

    D.   Appointment of the Settlement Administrator .....................................19

i

E.    Appointment of Settlement Class Counsel ..........................................20

VI.    CONCLUSION .............................................................................20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)................................................................10

*Broomfield v. Craft Brew Alliance, Inc.*, No. 17-cv-01027-BLF,
   2020 U.S. Dist. LEXIS 74801
   (N.D. Cal. Feb. 5, 2020) ......................................................17

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011)..................................................10

*G. F. v. Contra Costa Cty.*, No. 13-cv-03667-MEJ,
   2015 U.S. Dist. LEXIS 100512
   (N.D. Cal. July 30, 2015).......................................................18

*Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB) (RLE),
   2010 U.S. Dist. LEXIS 71996
   (S.D.N.Y. June 25, 2010) ......................................................14

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...............................................11

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018) .....................................12, 16

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) .................................................12

*In re LinkedIn User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) ...........................................12

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000)..................................................8

*In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807,
   2019 U.S. Dist. LEXIS 135573
   (N.D. Ohio Aug. 12, 2019) ....................................................17

*In re Target Corp. Customer Data Sec. Breach Litig.*, No. MDL 14-2522-PAM,
   2017 U.S. Dist. LEXIS 75455
   (D. Minn. May 17, 2017) .......................................................16

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
   No. 1:14-MD-02583-TWT,
   2017 U.S. Dist. LEXIS 221736,
   (N.D. Ga. Sept. 22, 2017) ......................................................16

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
   266 F. Supp. 3d 1 (D.D.C. 2017)...........................................14

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
  928 F.3d 42 (D.C. Cir. 2019) ........................................................................ 14

*In re Yahoo Mail Litig.*, No. 13-CV-4980,
  2016 U.S. Dist. LEXIS 115056
  (N.D. Cal. Aug. 25, 2016) ............................................................................... 9

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  No. 5:16-md-02752-LHK
  (N.D. Cal. July 20, 2019) .............................................................................. 12

*Just Film, Inc. v. Buono*,
  847 F.3d 1108 (9th Cir. 2017) ................................................................ 11, 12

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ............................................................... 14, 17

*Parsons v. Kimpton Hotel & Rest. Group, LLC*,
  No. 3:16-cv-05387-VC
  (N.D. Cal. Jan. 9, 2019) ................................................................................ 12

*Pauley v. CF Entm't*, No. 2:13-CV-08011-RGK-CW,
  2020 U.S. Dist. LEXIS 187614
  (C.D. Cal. July 23, 2020) ............................................................................ 8, 9

*Powers v. Eichen*,
  229 F.3d 1249 (9th Cir. 2000) ........................................................................ 8

*Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200-HSG,
  2020 U.S. Dist. LEXIS 206507
  (N.D. Cal. Nov. 4, 2020) ............................................................................... 17

*Smith v. Triad of Ala.*, LLC, No. 1:14-CV-324-WKW,
  2017 U.S. Dist. LEXIS 38574
  (M.D. Ala. Mar. 17, 2017) ............................................................................ 15

*Spann v. J.C. Penney Corp.*,
  314 F.R.D. 312 (C.D. Cal. 2016) .................................................................. 19

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ........................................................................ 11

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) .................................................................................. 11

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ...................................................................................... 10

**Other Authorities**

Manual for Complex Litigation, § 21.632 (4th ed., 2004). .......................................10

**Rules**

Fed. R. Civ. P. 23 ...............................................................................................*passim*

**I.      INTRODUCTION**

Plaintiff Cheryl Gaston initiated this action against FabFitFun, Inc. ("FabFitFun" or "Defendant") by filing a complaint on October 16, 2020, and Ms. Gaston, together with Renate Garrison, filed a First Amended Class Action Complaint (the "FAC") on January 29, 2021.   Plaintiffs Gaston and Garrison (together, "Plaintiffs") allege that FabFitFun experienced a security incident whereby unauthorized third parties may have accessed, via FabFitFun's website, certain Personally Identifiable Information ("PII") for those customers who purchased new subscriptions on its website from April 26, 2020 to May 14, 2020 and May 22, 2020 to August 3, 2020 (the "Security Incident").   Plaintiffs further allege that the unauthorized third parties exfiltrated everything they needed to illegally use FabFitFun's customers' payment cards to make fraudulent purchases, and that the stolen names and card information may be for sale on the dark web where criminals can acquire PII for malicious activity and identity theft. FabFitFun denies the allegations of the FAC and denies any wrongdoing or liability.

The parties engaged in a day-long mediation session on January 12, 2021, before mediator Martin Quinn, Esq, where they reached a resolution that – if accepted – will resolve the litigation and provide substantive relief to the Settlement Class Members ("Class Members").[1]   The parties have negotiated a settlement providing for a $625,000 Settlement Fund to be used as the exclusive source of payment to Class Members, costs of Claims Administration, payments made to the Claims Referee to resolve any disputed claims, any Attorneys' Fees and Expenses Award, and any Class Representative Service Awards (the "Settlement").   Class Members will have the option of claiming a Basic Award or a Reimbursement Award.   There are three different Basic Award tiers with three different initially established cash payment amounts:   $55, $25, and $12.   The tiers vary based upon the type of PII possibly

---

[1]      Unless otherwise indicated, the defined terms herein shall have the same definition as set forth in the Settlement Agreement and Release dated February 16, 2021 (the "Settlement Agreement" or "S.A."), filed herewith4.

exposed during the Security Incident.  The Reimbursement Award pays up to $5,000.  The Basic Awards and the Reimbursement Awards are all subject to proration if there are insufficient funds to pay these amounts based on the number of claimants.  On the other hand, these amounts may be increased by up to double if there are sufficient funds to do so.  If any funds remain in the Settlement Fund after distribution to Class Members, the balance will be distributed to a *cy pres* recipient to be selected by the Parties and approved by the Court.

Plaintiffs strongly believe the Settlement is fair, reasonable and adequate, and that the Court should grant it preliminary approval and notice should be distributed to Class Members.

## II.    STATEMENT OF FACTS

FabFitFun is a popular lifestyle e-commerce retailer best known for its flagship product, the FabFitFun Box.  ¶ 1.[2]  Defendant sells its memberships online through its website and uses an e-commerce platform to take customers' personal and payment information.

Plaintiffs allege that on or about September 18, 2020, FabFitFun began notifying customers and state Attorneys General about a data breach that occurred from April 26, 2020 to May 14, 2020 and May 22, 2020 to August 3, 2020.  Plaintiffs allege that hackers infected Defendant's website with malicious code and may have accessed customers' PII, including names, email addresses, FabFitFun account passwords, shipping and billing addresses, payment card account numbers, card expiration dates, and card verification codes. ¶ 2.  Plaintiffs further allege that all of this PII was compromised due to Defendant's negligent and/or careless acts and omissions and the failure to protect customers' data.  Plaintiffs allege that, in addition to its failure to prevent the Security Incident, Defendant failed to detect and report the breach for months.  ¶ 3.

Plaintiffs allege that they and similarly situated customers have suffered injury

---

[2]     References to "¶" are to the FAC, unless otherwise noted.

as a result of Defendant's conduct, including:  (i) lost or diminished value of their PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (iv) deprivation of rights they possess under (a) the Colorado Security Breach Notification Act, Colo. Rev. Stat. § 6-1-716, *et seq*., (b) the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq*., (c) the Oregon Unlawful Trade Practices Act, Or. Rev. Stat. § 646.605, *et seq*.; and (v) the continued risk to their PII, which Plaintiffs allege (a) may remain available on the dark web for individuals to access and abuse, and (b) remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

## III.    PROCEDURAL HISTORY

Plaintiff Gaston filed the initial complaint on October 16, 2020, alleging three causes of action:  (1) negligence; (2) declaratory relief; and (3) violation of the Colorado Consumer Protection Act, Colo. Rev. Stat § 6-1-101, *et seq*.  Plaintiff Gaston sought several types of equitable and monetary relief on behalf of all persons whose PII was compromised.

Subsequently, Plaintiff Gaston served Defendant with discovery, including interrogatories, requests for production of documents, requests for admission and a notice of deposition under Fed. R. Civ. P. 30(b)(6).  The parties held their Rule 26(f) conference on December 31, 2020, and filed their Rule 26(f) Report on January 14, 2021.  Defendant filed a Motion to Compel Arbitration and to Dismiss or Stay the Proceedings or, Alternatively, to Dismiss Plaintiff's Complaint on January 22, 2021.

The parties agreed to participate in mediation and prior to doing so informally exchanged discovery on a variety of topics including details of Plaintiff Gaston's purchases and injuries as well as the class allegations.  The parties also drafted and exchanged mediation briefs prior to mediation, and Plaintiff sent Defendant a

proposed FAC which, *inter alia*, added Ms. Garrison as a plaintiff.  The Parties met-and-conferred about Plaintiff's contemplated amendment.  At the all-day mediation with Martin Quinn, Esq. on January 12, 2021, the parties agreed in principle to the terms of a Settlement, spent the next few weeks negotiating the details of the Settlement Agreement and its exhibits, and executed the Settlement Agreement on February 16, 2021.

On January 29, 2021, Plaintiffs filed the FAC, adding plaintiff Garrison and claims for violations of the Colorado Security Breach Notification Act, Colo. Rev. Stat. § 6-1-716, *et seq*., and the Oregon Unlawful Trade Practices Act, Or. Rev. Stat. § 646.605, *et seq*.  FabFitFun filed a Motion to Compel Arbitration and to Dismiss or Stay the Proceedings or, Alternatively, to Dismiss the FAC on February 12, 2021.

## IV.  THE SETTLEMENT TERMS

### A.  Proposed Settlement Class

The Settlement will provide relief for the following Settlement Class: "[A]ll individuals identified by FabFitFun and to whom FabFitFun sent notice that their information may have been exposed in the Security Incident."  SA, § 1.35.  The Settlement Class contains approximately 441,160 individuals comprised of the following: (i) approximately 130,293 Class Members whose payment card, login and password information was potentially exposed in the Security Incident; (ii) approximately 68,807 Class Members whose login and account password, but not payment, information was potentially exposed in the Security Incident; and (iii) approximately 245,060 Class Members to whom FabFitFun sent notice of the Security Incident out of an abundance of caution but whose PII, upon further investigation, was not exposed or accessed by unauthorized third parties.

### B.  The Settlement Fund

FabFitFun has agreed to create a Settlement Fund in the amount of $625,000, which will be used to make payments to Class Members and to pay the costs of Claims Administration, a Claims Referee to resolve any disputed claims, any Attorneys' Fees

and Expenses Award, and any Class Representative Service Awards.  S.A., §§ 1.37, 2.1.[3]  Class Members will have the option of claiming one of three Basic Awards or a Reimbursement Award of up to $5,000.  S.A., §§ 2.2.1, 2.2.2.  Tier 1 Basic awards will initially be set at $55.00 for the approximately 130,293 Class Members, as identified by Defendant's records, who potentially had their payment card, login and password information exposed in the Security Incident; Tier 2 Basic awards will initially be set at $25.00 for the approximately 68,807 Class Members, as identified by Defendant's records, who potentially had their login and account password, but not payment, information exposed in the Security Incident; and Tier 3 Basic awards will initially be set at $12.00 for the approximately 245,060 Class Members not in Tier 1 or Tier 2.  FabFitFun notified the Tier 3 individuals out of an abundance of caution, but the PII belonging to these individuals was not exposed or accessed by unauthorized third parties.  *Id*., § 2.2.1.

Instead of a Basic Award, a Settlement Class Member may claim a Reimbursement Award if:  (i) during the Unauthorized Charge Period they experienced one or more fraudulent or unauthorized charges that they claim in good faith was more likely than not caused by the Security Incident on a payment method they used on Defendant's website during the Class Period, which charges were not denied, reversed or otherwise credited or reimbursed; and (ii) they made reasonable efforts to avoid, or seek reimbursement for, their losses, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance. *Id*., §2.2.2.  Class Members claiming a Reimbursement Award will be eligible for reimbursement of up to $5,000.00 total for the following unreimbursed losses, if any, incurred as a result of the Security Incident: (a) unreimbursed unauthorized charges during the Unauthorized Charge Period on a payment method used on Defendant's website that more likely than not resulted from the Security Incident (only for Class

---

[3]   Defendant, in conjunction with Angeion, will be providing and paying for the notice required under the Class Action Fairness Act (CAFA), within the timelines specified by 28 U.S.C. § 1715(b).  S.A., § 7.4.

Members, as identified by Defendant's records, who potentially had their payment information exposed in the Security Incident); (b) up to three hours of lost time spent dealing with the unreimbursed, unauthorized charges at a rate of $20.00 per hour, but only if at least one full hour was spent, and only if the time can be documented with reasonable specificity by answering the questions on the Claim Form; and (c) Out of Pocket Expenses. *Id.*

If there are insufficient funds to pay these amounts based on the number of claimants, the payment to each claimant will be reduced *pro rata*. *Id.*, § 7.3.2. On the other hand, if the total dollar value of all Approved Claims at the payment rates is less than the amount remaining in the Settlement Fund after the Attorneys' Fees and Expenses Award, Service Awards, Claims Administration costs, and any payments to the Claims Referee have been paid in full, the payment amount for all Approved Claims will be increased *pro rata* among all Class Members who submitted Approved Claims by up to double the initial amounts stated above. *Id.* § 7.3.1. Any funds remaining in the Settlement Fund after distributions to Class Members will be distributed to a *cy pres* recipient, selected by the Parties with approval from by Court. *Id.*, § 7.6.

## C. Injunctive Relief

As part of the Settlement, FabFitFun agrees that it has taken or will take the following steps:

1. Employ a third-party cyber security forensic expert to conduct a risk assessment of the FabFitFun data assets and environment consistent with the NIST Risk Management Framework.

2. Offer multi-factor authentication for all FabFitFun customer accounts.

3. Implement a process to train FabFitFun security personnel regarding any new or modified security procedure.

4. Hire additional FabFitFun security/technical personnel, including a Director of Cyber Security or equivalent (subject to Defendant's general employment

practices and policies, including at-will employment if applicable).

5. Complete Payment Card Industry ("PCI") Self-Assessment Questionnaire ("SAQ") A.

6. Conduct phishing and penetration testing of the FabFitFun enterprise environment and enterprise user base.

7. Deploy intrusion detection and prevention, malware and anti-virus, and monitoring applications within the FabFitFun environment, as appropriate.

8. Implement regular reviews of the logs of FabFitFun's ecommerce platform, as appropriate.

S.A., § 2.5.  These changes will benefit those members of the Settlement Class whose information remains in FabFitFun's possession, and also other customers who make purchases from FabFitFun in the future.

### D. Class Notice and Settlement Administration

Notice will be given to the Settlement Class via email with a postcard mailed in those instances where the emails bounce back as undeliverable, and by posting a long form notice on a dedicated settlement website.  Due to the nature of FabFitFun's business, FabFitFun has email addresses for the potential Class Members, and individual notice will be given primarily by emailing the Summary Notice, attached to the Settlement Agreement as Exhibit E, to the email addresses associated with the accounts of Class Members.  Joint Decl., ¶ 37.  Postcard notice will be sent to Class Members who could not be successfully noticed via email with the Postcard Notice attached to the Settlement Agreement as Exhibit F.  *Id*.  A Long Notice, attached to the Settlement Agreement as Exhibit B, will also be posted on the settlement website, www.FFFdbsettlement.com, along with other important documents such as the Settlement Agreement and the motions for final approval and for attorneys' fees and expenses.  S.A., §§ 3.1(f), 4.2.2.  The notice documents are clear and concise and directly apprise Class Members of all the information they need to know to make a claim or to opt-out or object to the Settlement.  Fed. R. Civ. P. 23(c)(2)(B).

Furthermore, a toll-free number with interactive voice response, FAQs, and an option to speak to a live operator will also be made available to address Class Members' inquiries.  S.A., § 4.2.2.

Moreover, Plaintiffs have retained Angeion Group, LLC, a nationally recognized and well-regarded class action settlement administrator, to serve as Claims Administrator, subject to the Court's approval.  *See* Joint Decl., Ex. 1 (Declaration of Steven Weisbrot ("Weisbrot Decl.")).  Angeion has estimated that notice and administration costs will total approximately $83,720.  *Id.*, ¶ 24.

**E.    Attorneys' Fees and Expenses**

Plaintiffs will also separately seek an award of attorneys' fees not to exceed 25% of the Settlement Fund (*i.e.*, $156,250), and for reimbursement of their reasonable costs and litigation expenses incurred, which shall be paid from the Settlement Fund.  The motion will be filed at least thirty-five (35) days before the Objection Deadline and will be posted on the settlement website (www.FFFdbsettlement.com).  S.A., § 9.1.  Defendant has agreed to take no position with regard to the motion.  *Id*.

Class Counsel's fee request is well within the range of reasonableness for Settlements of this nature and size.  This Court recently stated that "25% [is] considered the benchmark" in the Ninth Circuit.  *Pauley v. CF Entm't*, No. 2:13-CV-08011-RGK-CW, 2020 U.S. Dist. LEXIS 187614, at *8 (C.D. Cal. July 23, 2020), *citing Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).  In fact, the Ninth Circuit has found attorneys' fees awards of 1/3 of the fund to be reasonable.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming award of one-third of total recovery).

**F.    Service Awards to Named Plaintiffs**

Plaintiffs in this case have been vital in litigating this matter, including providing their FabFitFun account information, credit card information, order history and credit card monitoring information. Plaintiffs have been personally involved in

the case and support the Settlement. Joint Decl., ¶ 46. Plaintiffs will separately petition the Court for awards of $5,000 each in recognition of the time, effort, and expense they incurred pursuing claims that benefited the Settlement Class. *See* S.A., § 9.2.

The amount requested here is presumptively reasonable and commonly awarded in settled class action cases. *See, e.g.*, *Pauley*, 2020 U.S. Dist. LEXIS 187614, at *10-11 (This Court granted "class representative enhancement fees in the amount of $5,000 each to Plaintiffs," finding that amount to be "presumptively reasonable."); *In re Yahoo Mail Litig.*, No. 13-CV-4980, 2016 U.S. Dist. LEXIS 115056, at *36 (N.D. Cal. Aug. 25, 2016) ("The Ninth Circuit has established $5,000.00 as a reasonable benchmark [for service awards].").

**G.    Release**

Upon entry of the Final Approval Order, Plaintiffs and the Settlement Class will be deemed to have "completely and unconditionally released, forever discharged and acquitted the Released Persons from any and all of the Released Claims," including Unknown Claims. S.A., § 8.1. "Released Claims" are defined, *inter alia*, as those that "result from, arise out of, are based upon, or relate to the Security Incident, that were or could have been alleged in the Litigation, based upon the facts alleged in the FAC including, without limitation, any claims, actions, causes of action (including under state consumer protection and privacy statutes, including without limitation those of Colorado, California, and Oregon), demands, damages, penalties, losses, or remedies relating to, based upon, resulting from, or arising out of (1) the theft, exposure or disclosure of Class Members' Personal Information; (2) the maintenance and storage of Class Members' Personal Information; (3) the Defendant's information security policies and practices; and (4) Defendant's notice of the Security Incident to Class members." *Id.*, § 1.27. Plaintiffs and the Settlement Class do "not release any claims that are not related to or that do not arise in connection with the Security Incident or the allegations, facts or circumstances described in the Litigation and/or FAC." *Id.*

# V.    ARGUMENT

## A.    The Court Should Certify the Class for Settlement Purposes

Before assessing the parties' settlement, the Court should first confirm the underlying settlement class meets the requirements of Rule 23. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-620 (1997); Manual for Complex Litigation, § 21.632 (4th ed., 2004). The requirements are well known:  numerosity, commonality, typicality, and adequacy—each of which is met here. Fed. R. Civ. P. 23(a); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011)

### 1.    The Rule 23(a) Requirements Are Met for Purposes of Settlement

The Settlement Class includes more than 441,000 individuals identified by FabFitFun and to whom FabFitFun sent notice that their information may have been exposed in the Security Incident; therefore, it readily satisfies the numerosity requirement for purposes of the settlement. *See* Fed. R. Civ. P. 23(a)(1).

The commonality requirement, which requires that class members' claims "depend upon a common contention" of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke," is also met for purposes of the settlement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, Plaintiffs' claims turn on whether FabFitFun's security environment was adequate to protect Class Members' PII. The resolution of that inquiry revolves around evidence that does not vary from class member to class member, and so can be fairly resolved—at least for purposes of settlement—for all Class Members at once.

Likewise, typicality and adequacy are easily met for purposes of settlement. The Proposed Representative Plaintiffs allege that each FabFitFun customer who purchased new subscriptions from the FabFitFun website from April 26, 2020 to May 14, 2020 and May 22, 2020 to August 3, 2020, may have had their PII compromised, and were therefore impacted by the same allegedly inadequate data security that they

allege harmed the rest of the Settlement Class.  *See Just Film, Inc. v. Buono,* 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class.").  Representative Plaintiffs also have no conflicts with the Settlement Class; have participated actively in the case; and are represented by attorneys experienced in class action litigation, including data breach cases.  *See Staton v. Boeing Co.,* 327 F.3d 938, 957 (9th Cir. 2003) (adequacy satisfied if plaintiff and their counsel lack conflicts of interest and are willing to prosecute the action vigorously); Joint Decl., ¶ 46.

### 2. The Requirements of Rule 23(b) Are Met for Purposes of Settlement

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).  Here, the Settlement Class is maintainable for purposes of settlement under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair and efficient resolution of the controversy.  *Id.*  Plaintiffs' claims depend, first and foremost, on whether FabFitFun used reasonable data security measures to protect consumers' PII.  That question can be resolved, for purposes of settlement, using the same evidence for all Class Members, and thus is precisely the type of predominant question that makes a class-wide settlement worthwhile.  *See, e.g., Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) … .'") (citation omitted).

Additionally, for purposes of settlement, a class action is the superior method of adjudicating consumer claims arising from the Security Incident—just as in other data breach cases where class-wide settlements have been approved. *See, e.g., In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 5:16-md-02752-LHK (N.D. Cal.

July 20, 2019); *Parsons v. Kimpton Hotel & Rest. Group, LLC*, No. 3:16-cv-05387-VC (N.D. Cal. Jan. 9, 2019); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 316-17 (N.D. Cal. 2018); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015). Adjudicating individual actions here is impracticable: the amount in dispute for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. *See Just Film*, 847 F.3d at 1123. Therefore, the Court can and should certify the Settlement Class for purposes of the Settlement.

### B. The Settlement Should Be Preliminarily Approved

Rule 23(e) provides that a proposed class action may be "settled, voluntarily dismissed, or compromised only with the court's approval." Moreover, "[t]he parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." If the parties make a sufficient showing that the Court will likely be able to "approve the proposal" and "certify the class for purposes of judgment on the proposal", "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e). Thus, notice should be given to the class, and hence preliminary approval should be granted, where the Court "will likely be able to" finally approve the settlement under Rule 23(e)(2) and certify the class for settlement purposes. *Id.*

Rule 23(e) comports with the factors used in this Circuit to determine whether a settlement should be given final approval: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement; and (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Each of these factors weighs in favor

of approval here.

### 1. The Strength of Plaintiffs' Case

Plaintiffs believe they have built a strong case for liability. With respect to Plaintiffs' negligence claim, Plaintiffs believe they will ultimately be able to offer evidence that Defendant was negligent in failing to maintain reasonable and current data security programs and practices, which led directly to the loss of Plaintiffs' and the Class' PII. Joint Decl., ¶ 49.

Plaintiffs also allege that Defendant's failure to protect the PII constitutes a violation of the Oregon Unlawful Trade Practices Act, Or. Rev. Stat. § 646.605, *et seq*. and the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq*. *See* ¶¶ 93-104, 113-124. Both of these Acts prohibit businesses from engaging in unlawful business practices, including advertising that its goods and/or services have approval, characteristics, uses, benefits, and qualities that they do not have. *Id*., ¶¶ 97, 118. Here, Plaintiffs allege that Defendant violated the Oregon Unlawful Trade Practices Act and the Colorado Consumer Protection Act by, *inter alia*, misrepresenting that it would protect the privacy and confidentiality of Plaintiffs class members' PII, including by implementing and maintaining reasonable security measures. *See* ¶¶ 98, 118-119. Plaintiffs also believe they have adequately alleged and can prove that Defendant violated the Colorado Security Breach Notification Act, Colo. Rev. Stat. § 6-1-716, *et seq*., which required FabFitFun to accurately notify Plaintiff Gaston and Colorado Subclass members if it became aware of a breach of its data security system in the most expedient time possible and without unreasonable delay. *Id*., ¶ 108. Plaintiffs allege that Defendant failed to disclose the Data Breach in a timely and accurate manner. *Id*., ¶ 110.

Plaintiffs believe their claims are viable and that they have a reasonably good chance of proving that FabFitFun's data security was inadequate and that, if they establish that central fact, Defendant is likely to be found liable under at least some of the liability theories and statutory and common law Plaintiffs pled in their FAC.

However, given the heavy obstacles and inherent risks Plaintiffs face with respect to the novel claims in data breach class actions, including class certification, summary judgment, and trial, the substantial benefits the Settlement provides favors preliminary approval of the Settlement. Joint Decl., ¶ 51.

## 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

While Plaintiffs believe their case is a strong one, all cases, including this one, are subject to substantial risk. This case involves a proposed class of hundreds of thousands of individuals (each of whom, FabFitFun has argued, would need to establish cognizable harm); a complicated and technical factual overlay; and a sympathetic and motivated Defendant that already has provided relief to its potentially affected customers.

Although nearly all class actions involve a high level of risk, expense, and complexity—undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—this is an especially complex class in an especially risky arena. Historically, data breach cases face substantial hurdles in surviving even the pleading stage. *See, e.g., Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB) (RLE), 2010 U.S. Dist. LEXIS 71996, at *2-4 (S.D.N.Y. June 25, 2010) (collecting cases). Even cases of similar wide-spread notoriety and implicating data far more sensitive than at issue here have been found wanting at the district court level. *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), *reversed in part*, 928 F.3d 42 (D.C. Cir. 2019) (holding that plaintiff had standing to bring a data breach lawsuit).

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, data breach cases are among the riskiest and

1  uncertain of all class action litigation, making settlement the more prudent course
2  when a reasonable one can be reached.   The damages methodologies, while
3  theoretically sound in Plaintiffs' view, remain untested in a disputed class certification
4  setting and unproven in front of a jury.   And as in any data breach case, establishing
5  causation on a class-wide basis is rife with uncertainty.

6          Additionally, FabFitFun argued in its motion to dismiss that its website terms
7  of use include a class action waiver and provide for mandatory arbitration.   While
8  Plaintiffs believe they have valid arguments in opposition, they recognize the risk that
9  FabFitFun may be successful on a motion to enforce the class action waiver and
10 compel individual arbitration.   This would deprive Plaintiffs of the ability to bring
11 this action on behalf of the putative class, result in the dismissal of the claims, and
12 require arbitration of those claims.

13         Therefore, given these risks and uncertainties, Plaintiffs believe the $625,000
14 Settlement Fund is a good result and provides a substantial benefit to the Settlement
15 Class.

16         **3.**    **The Risk of Maintaining Class Action Status Through Trial**

17         While Plaintiffs' case is still in the pleadings stage, the parties have not briefed
18 and the Court have not yet certified any class treatment of this case.[4]   Class
19 certification in consumer data breach cases is rare—first occurring in *Smith v. Triad*
20 *of Ala.*, LLC, No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574, at *45-46
21 (M.D. Ala. Mar. 17, 2017).   While certification of additional consumer data breach
22 classes may well follow, the dearth of direct precedent adds to the risks posed by
23 continued litigation.

24         **4.**    **The Amount Offered in Settlement**

25         In light of the risks and uncertainties presented by data breach litigation, the
26 $625,000 Settlement Fund achieved for the Settlement Class in this case is a good
27 result.   The Settlement here approximates to a payment of $1.42 per class member.

28
_____
[4]      Plaintiffs' Motion for Class Certification is currently due February 22, 2021.
*See* ECF No. 8.

Based on Class Counsel's experience in prior similar cases, and with the claims rates in those cases, the Settlement Fund of $625,000, the Basic Awards, and the up to $5,000 Reimbursement Award should be sufficient to recompense the legitimate individual claims and all class wide claims in the aggregate.  Joint Decl., ¶ 53.

The Settlement value per class member here is on par with or exceeds that in other exemplary data breach settlements.  For example, the consideration paid by Home Depot to settle a data breach class action was approximately $0.51 per class member. *See In re The Home Depot, Inc., Customer Data Sec. Breach Litig*., No. 1:14-MD-02583-TWT, ECF No. 181-2 (March 7, 2016) (Settlement Agreement); *id*., 2017 U.S. Dist. LEXIS 221736, at *24 (N.D. Ga. Sept. 22, 2017) (order approving settlement).  And the Target data breach resolved with Target paying the equivalent of $0.17 per class member.  *See In re Target Corp. Customer Data Sec. Breach Litig*., No. MDL 14-2522-PAM, ECF No. 358-1 (D. Minn. March 18, 2015) (Settlement Agreement); *id*., 2017 U.S. Dist. LEXIS 75455, at *27-29 (D. Minn. May 17, 2017) (order certifying settlement class on remand from the 8th Circuit).  These comparisons are not intended to disparage the settlements achieved in those cases, but to underscore that Plaintiffs have achieved a good resolution for the Settlement Class.

Together, the Settlement Fund and the injunctive measures to which FabFitFun has agreed (S.A., § 2.5) provide Class Members with both compensation for the damages they may have sustained as a result of the Security Incident and improved security of their PII.  Class Members will have the opportunity to claim one of three Basic Awards or up to $5,000.00 for a Reimbursement Award, all subject to doubling if there are sufficient funds and proration if there are insufficient funds to pay these amounts based on the number of claimants.  Angeion Group and Class Counsel assumed for purposes of their estimates that 3% of Class Members are likely to file claims, which is within the range of similar settlements.  Joint Decl., ¶ 16 and Ex. 1 (Weisbrot Decl.), ¶ 25.[5]  Therefore, it is likely that the Basic Awards to Class

---

[5]     *See also, e.g., In re Anthem, Inc.*, 327 F.R.D. at 321 (claims rate was 1.8%); *In re Sonic Corp. Customer Data Sec. Breach Litig*., No. 1:17-md-2807, 2019 U.S. Dist.

1   Members who file valid claims will be approximately $55 for Tier 1, $25 for Tier 2

2   and $12 for Tier 3.  Joint Decl., ¶ 17. Class Counsel believe this is an excellent result

3   and provides substantial benefit to the Settlement Class.  *Id.*, ¶ 53.

4          **5.   The Extent of Discovery Completed and the Stage of**

5              **Proceedings**

6          Before entering into settlement discussions on behalf of class members, counsel

7   should have "sufficient information to make an informed decision." *Linney*, 151 F.3d

8   at 1239.  Here, Plaintiffs vigorously and aggressively gathered all of the information

9   that was available regarding FabFitFun's and the Security Incident—including

10  publicly-available documents concerning announcements of the Security Incident and

11  notice of the Security Incident to its customers.  Joint Decl., ¶ 54.  The parties also

12  informally exchanged non-public information concerning the Security Incident and

13  the size of the Class in preparation for a successful mediation.  *Id.*  Prior execution of

14  the Settlement Agreement and the filing of this motion, Plaintiffs also received

15  confirmatory discovery from Defendant in the form of a declaration attesting to the

16  nature and extent of the Security Incident.  *Id.*

17         Although the parties have not engaged in formal discovery (although Plaintiffs

18  served it), Class Counsel's collective decades of experience in similar types of privacy

19  and data protection practices provided substantive knowledge on the subject to enable

20  Class Counsel to represent Plaintiffs' and Class Members' interests without

21  expending hundreds of hours and enormous financial resources to come up to speed

22  on the subject area.  *Id.*, ¶ 55.  Accordingly, Plaintiffs are well informed about the

23  strengths and weaknesses of this case.

24

25  _____

26  LEXIS 135573, at *9 (N.D. Ohio Aug. 12, 2019) (claims rate was 4%); *Schneider v.
    Chipotle Mexican Grill, Inc.*, No. 16-cv-02200-HSG, 2020 U.S. Dist. LEXIS 206507,

27  at *599 (N.D. Cal. Nov. 4, 2020) (0.83% claims rate), citing *Broomfield v. Craft Brew
    Alliance, Inc.*, No. 17-cv-01027-BLF, 2020 U.S. Dist. LEXIS 74801, at *19 (N.D.

28  Cal. Feb. 5, 2020) (approving settlement with response rate of "about two percent").

### 6.     The Experience and Views of Counsel

Class Counsel initiated this lawsuit when FabFitFun announced the Security Incident, which, based upon publicly-available information, may have impacted tens of thousands of FabFitFun customers.  Class Counsel have substantial experience litigating complex class cases of various types, including data breach cases such as this one.  *See* Joint Decl., ¶ 48 & Exs. 2 and 3 thereto.  Having worked on behalf of the putative class since the Security Incident was first announced, evaluated the legal and factual disputes, and dedicated significant time and monetary resources to this litigation, proposed Class Counsel endorse the Settlement without reservation.  *Id.*, ¶ 56.

### 7.     The Reaction of the Class Members to the Proposed Settlement

Because notice has not yet been given, this factor is not yet implicated; however, Representative Plaintiffs support the Settlement.  Joint Decl., ¶ 46.

### 8.     Lack of Collusion Among the Parties

The parties negotiated a substantial Settlement Fund, making available $625,000 to resolve this case.  The parties did not commence discussion of fees until agreement on all substantive portions of the class resolution had been reached, and both the class portion of the resolution and the fees were negotiated at arm's-length under the direction of the parties' mutually agreed-upon mediator Martin Quinn, Esq., who has extensive experience in handling class action cases.  Therefore, the Court can be assured that the negotiations were not collusive.  *See G. F. v. Contra Costa Cty.*, No. 13-cv-03667-MEJ, 2015 U.S. Dist. LEXIS 100512, at *43 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement  process confirms that the settlement is non-collusive.") (internal quotation marks and citation omitted).

### C.     The Court Should Approve the Proposed Notice Program

Rule 23 requires that prior to final approval, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed.

R. Civ. P. 23(e)(1)(B).  For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  "The notice may be by one or more of the following:  "United States mail, electronic means, or other appropriate means." *Id*.

Here, because Class Members' email addresses are available and reliable, the chief vector of direct individual notice will be via email. S.A., § 4.2.1. & Ex. E.  Even prior to Rule 23 expressly permitting electronic notice, courts permitted email notice in similar circumstances.  *See, e.g., Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 331 (C.D. Cal. 2016).  The Claims Administrator will also send, to any Class Members to whom Summary Notices were not successfully delivered by email (i.e., because they bounced back), a Postcard Notice by U.S. Mail.  S.A., § 4.2.1. & Ex. F.  Moreover, on the dedicated settlement website (www.FFFdbSettlement.com), Class Members will be able to review the detailed Long Notice, which provides clear and concise information with respect to all the relevant aspects of the litigation, including the information necessary for Class Members to make informed decisions with respect to whether to opt out of the Settlement Class or object to the proposed Settlement.  S.A., § 4.2.2 & Ex. B.  A toll-free number with interactive voice response, FAQs and an option to speak to a live operator will also be made available to address Class Members' inquiries.  *Id*.  Accordingly, the content and method of dissemination of the proposed Class Notice fully comports with the requirements of due process, the Federal Rules of Civil Procedure, and applicable case law.

### D.  Appointment of the Settlement Administrator

In connection with implementation of the Notice Program and administration of the settlement benefits, the Parties request the Court appoint Angeion Group to serve as the Claims Administrator.  Angeion has a trusted and proven track record of supporting over 2,000 class action administrations and the distribution of over $12 billion to class members.  Joint Decl., Ex. 1 (Weisbrot Decl.), ¶ 8.  Angeion was

1  selected as the lowest bid after blind competitive bids were solicited from three claims

2  administrators.   Joint Decl., ¶ 43.   Notice and administration is expected to cost

3  approximately $83,720 and will be paid out of the Settlement Fund.  *Id*., ¶ 24.

4  **E.**    **Appointment of Settlement Class Counsel**

5  Under Rule 23, "a court that certifies a class must appoint class counsel [who

6  must] fairly and adequately represent the interests of the class." Fed. R. Civ. P.

7  23(g)(1)(B). In making this determination, courts generally consider the following

8  attributes: the proposed class counsel's (1) work in identifying or investigating

9  potential claims, (2) experience in handling class actions or other complex litigation,

10  and the types of claims asserted in the case, (3) knowledge of the applicable law, and

11  (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

12  Here, proposed Class Counsel have extensive experience prosecuting class

13  actions and other complex cases, and specifically data breach cases. *See* Joint Decl.,

14  Exs. 2 and 3 (firm resumes).  Accordingly, the Court should appoint M. Anderson

15  Berry of Clayeo C. Arnold Professional Law Corporation and Rachele R. Byrd of

16  Wolf Haldenstein Adler Freeman & Herz LLP as Class Counsel.

17  **VI.    CONCLUSION**

18  For all of the foregoing reasons, Plaintiffs respectfully request that the Court

19  preliminarily approve the Settlement.

20

21  DATED:  February 19, 2021          **WOLF HALDENSTEIN ADLER**
                                        **FREEMAN & HERZ LLP**

22                                    By: */s/ Rachele R. Byrd*
23                                        RACHELE R. BYRD

24                                    BETSY C. MANIFOLD (182450)
25                                    RACHELE R. BYRD (190634)
                                      MARISA C. LIVESAY (223247)
26                                    BRITTANY N. DEJONG (258766)

27                                    **CLAYEO C. ARNOLD,**
                                        **A PROFESSIONAL LAW CORP.**
28                                    M. ANDERSON BERRY (262879)
                                      LESLIE GUILLON (222400)

1

2

*Attorneys for Plaintiffs Cheryl Gaston and Renate Garrison*

3

4

5

6

26967v7

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28