BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. BYRD (190634)
byrd@whafh.com
MARISA C. LIVESAY (223247)
livesay@whafh.com
BRITTANY N. DEJONG (258766)
dejong@whafh.com
**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile:   619/234-4599

M. ANDERSON BERRY (262879)
aberry@justice4you.com
**CLAYEO C. ARNOLD,**
 **A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 777-7777
Facsimile: (916) 924-1829

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERYL GASTON and RENATE GARRISON, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> FABFITFUN, INC., <br><br> Defendant. | Case No. 2:20-cv-09534-RGK-E <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> DATE:            October 4, 2021 <br> TIME:            9:00 a.m. <br> COURTROOM:   850, 8th Floor <br> JUDGE:          Hon. R. Gary Klausner |

1
2

# **TABLE OF CONTENTS**

I.     INTRODUCTION .................................................................................1

II.    BACKGROUND ..................................................................................2

 A.    Plaintiffs' Allegations and Claims.......................................2

 B.    The Case Litigation and Settlement....................................2

 C.    Preliminary Approval ........................................................3

III.   THE SETTLEMENT TERMS .............................................................3

 A.    Proposed Settlement Class .................................................3

 B.    The Settlement Fund .........................................................3

 C.    Injunctive Relief ...............................................................5

 D.    Release ...........................................................................6

IV.    Notice to the Class .............................................................................6

 A.    Claims, Requests for Exclusion and Objections...................7

 B.    Settlement Notice and Administration Expenses ..................8

V.     ARGUMENT .......................................................................................8

 A.    The Court Should Certify the Class for Settlement Purposes ...............8

  1.    The Rule 23(a) Requirements Are Met for
   Purposes of Settlement .............................................9

  2.    The Requirements of Rule 23(b) Are Met for
   Purposes of Settlement ...........................................10

 B.    The Settlement Should Be Finally Approved......................11

  1.    The Strength of Plaintiffs' Case ...........................11

  2.    The Risk, Expense, Complexity, and Likely Duration
   of Further Litigation .............................................13

  3.    The Risk of Maintaining Class Action Status Through Trial...........14

  4.    The Amount Offered in Settlement ........................14

  5.    The Extent of Discovery Completed and the
   Stage of Proceedings............................................15

  6.    The Experience and Views of Counsel....................16

  7.    The Positive Reaction of the Class Members Favors
   Final Approval ....................................................16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

8.   Lack of Collusion Among the Parties ................................................17

VI.   CONCLUSION .............................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 59 (1997)................................................................................8

*Ellis v. Costco Wholesale Corp.,*
   657 F.3d 970 (9th Cir. 2011)..............................................................8

*G. F. v. Contra Costa Cty.,*
   No. 13-cv-03667-MEJ, 2015 U.S. Dist. LEXIS 100512
   (N.D. Cal. July 30, 2015)...................................................................17

*Hammond v. The Bank of N.Y. Mellon Corp.,*
   No. 08 Civ. 6060 (RMB) (RLE), 2010 U.S. Dist. LEXIS 71996
   (S.D.N.Y. June 25, 2010) ..................................................................13

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ...........................................................10

*In re Anthem, Inc. Data Breach Litig.,*
   327 F.R.D. 299 (N.D. Cal. 2018) .......................................................11

*In re Bluetooth Headset Prods. Liab. Litig.,*
   654 F.3d 935 (9th Cir. 2011) .............................................................11

*In re LinkedIn User Privacy Litig.,*
   309 F.R.D. 573 (N.D. Cal. 2015) .......................................................11

*In re Target Corp. Customer Data Sec. Breach Litig.,*
   No. MDL 14-2522-PAM,
   2017 U.S. Dist. LEXIS 75455 (D. Minn. May 17, 2017) ...................15

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.,*
   No. 1:14-MD-02583-TWT, 2017 U.S. Dist. LEXIS 221736
   (N.D. Ga. Sept. 22, 2017) .................................................................15

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.,*
   266 F. Supp. 3d 1 (D.D.C. 2017), *reversed in part,*
   928 F.3d 42 (D.C. Cir. 2019)..............................................................13

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.,*
   No. 5:16-md-02752-LHK (N.D. Cal. July 20, 2019) ..........................11

*Just Film, Inc. v. Buono,*
   847 F.3d 1108 (9th Cir. 2017) ......................................................10, 11

*Linney v. Cellular Alaska P'ship,*
   151 F.3d 1234 (9th Cir. 1998)........................................................13, 15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
   221 F.R.D. 523 (C.D. Cal. 2004)........................................................17

*Parsons v. Kimpton Hotel & Rest. Group, LLC,*
  No. 3:16-cv-05387-VC (N.D. Cal. Jan. 9, 2019) ................................... 11

*Smith v. Triad of Ala., LLC,*
  No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574
  (M.D. Ala. Mar. 17, 2017) ....................................................... 14

*Staton v. Boeing Co.,*
  327 F.3d 938 (9th Cir. 2003) .................................................... 10

*Tyson Foods, Inc. v. Bouaphakeo,*
  136 S. Ct. 1036 (2016) .......................................................... 10

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011) .............................................................. 9

**Statutes**

28 U.S.C. § 1715(b) ................................................................ 4

Colorado Consumer Protection Act, Colo. Rev. Stat § 6-1-101, *et seq* ..............2, 12

Colorado Security Breach Notification Act, Colo. Rev. Stat. § 6-1-716, *et seq.* .......12

Oregon Unlawful Trade Practices Act, Or. Rev. Stat. § 646.605, *et seq.* ................12

**Other Authorities**

4 Newberg on Class Actions, § 11:48 ............................................... 17

Manual for Complex Litigation, § 21.632 (4th ed., 2004) ............................ 8

**Rules**

Fed. R. Civ. P.
  rule 23 ..................................................................... 8, 9
  rule 23 (a) .............................................................. 8, 9, 10
  rule 23(b)(1) ................................................................ 10
  rule 23(b)(2) ................................................................ 10
  rule 23(b)(3) ............................................................. 9, 10
  rule 23(e) ................................................................... 11

**I.     INTRODUCTION**

On April 2, 2021, this Court granted preliminary approval of the proposed settlement that would resolve this litigation.  The Court provisionally certified the proposed class pursuant to Federal Rule of Civil Procedure ("Rule") 23 for settlement purposes, preliminarily approved the settlement terms as fair, adequate and reasonable, directed that notice be given to the Settlement Class, and scheduled a Final Approval Hearing for October 4, 2021.[1]  ECF No. 38 (the "Preliminary Approval Order").  The parties complied with the order and now ask the Court to finally approve the Settlement.

The Settlement is fair, adequate and reasonable and represents a substantial recovery for the Settlement Class.  Providing for a $625,000 Settlement Fund, the settlement delivers considerable relief to the Settlement Class.  Despite the strength of Plaintiffs' claims, the Settlement Class would otherwise continue to face significant litigation risk in the form of motions to dismiss and/or compel arbitration, opposition to class certification, motions for summary judgment, protractive fact and expert discovery, trial and potential appeals.

The reaction of the Settlement Class has been overwhelmingly positive.  The deadline to object or opt out of the settlement was June 16, 2021.  As of the filing of this motion, in response to 432,342 direct Summary Notice emails, 2,387 direct Summary Notice postcards, a website, and a toll-free number, no one has objected to the settlement and only 5 individuals opted out.  The deadline to submit a claim form was July 31, 2021.  As of the date of this filing, the Claims Administrator has received 22,928 claim forms. This amounts to approximately 5% of the Settlement Class.  Of the 22,928 timely Claim Forms received, 21,777 were claims for a Basic Award (Tiers I, II, and II) while 1,151 claims were Reimbursement requests.

---

[1]     Unless otherwise indicated, the defined terms herein shall have the same definitions as set forth in the Settlement Agreement and Release executed February 16, 2021 (the "Settlement Agreement" or "S.A."), filed in support of the Motion for Preliminary Approval.  *See* ECF No. 31.

1    As set forth herein, Plaintiffs respectfully request that the Court grant final
2    approval of the settlement.

3    **II.    BACKGROUND**

4    Inasmuch as Plaintiffs detailed the background of the case in their Motion for
5    Preliminary Approval, Plaintiffs set forth a summary of the case only to the extent
6    relevant to the instant motion.

7    **A.    Plaintiffs' Allegations and Claims**

8    This litigation arose out of allegations of a Security Incident whereby third
9    parties may have accessed Defendant's customers' Personal Information in
10   connection with unauthorized access to Defendant's website from April 26, 2020 to
11   May 14, 2020 and May 22, 2020 to August 3, 2020. First Amended Complaint
12   ("FAC") ¶ 2.

13   **B.    The Case Litigation and Settlement**

14   Plaintiff Gaston filed the initial complaint on October 16, 2020, alleging three
15   causes of action: (1) negligence; (2) declaratory relief; and (3) violation of the
16   Colorado Consumer Protection Act, Colo. Rev. Stat § 6-1-101, *et seq.*   Joint
17   Declaration of Rachele R. Byrd and M. Anderson Berry In Support of Plaintiffs'
18   Motion for Approval of Attorneys' Fees Award, Expense Reimbursement, and
19   Service Awards to Representative Plaintiffs ("Fees Motion Joint Declaration"), ¶ 9.
20   Plaintiff Gaston sought several types of equitable and monetary relief on behalf of all
21   persons whose PII was compromised. *Id.*

22   Subsequently, Plaintiff Gaston served Defendant with discovery, including
23   interrogatories, requests for production of documents, requests for admission and a
24   notice of deposition under Fed. R. Civ. P. 30(b)(6). *Id.*, ¶ 10.  Defendant filed a Motion
25   to Compel Arbitration and to Dismiss or Stay the Proceedings or, Alternatively, to
26   Dismiss Plaintiff's Complaint on January 20, 2021.  *See* ECF No. 21.

27   The parties reached a settlement in principal on January 12, 2021, during an
28   all-day mediation with Martin Quinn, Esq.  *Id.*, ¶ 14.  They then spent the next few

weeks negotiating the details of the Settlement Agreement and its exhibits and executed the Settlement Agreement on February 16, 2021. *Id* ¶ 17.

### C.   Preliminary Approval

Plaintiffs filed their Motion for Preliminary Approval on February 19, 2021. ECF No. 32. On April 2, 2021, the Court granted Plaintiffs' Motion for Preliminary Approval (ECF No. 38), provisionally certified a nationwide Settlement Class and directed that notice be issued to Settlement Class Members pursuant to the settlement. *Id*. at 13.

## III.   THE SETTLEMENT TERMS

### A.   Proposed Settlement Class

The settlement will provide relief for the following Settlement Class: "[A]ll individuals identified by FabFitFun and to whom FabFitFun sent notice that their information may have been exposed in the Security Incident." S.A., § 1.35.  The Settlement Class contains approximately 441,160 individuals comprised of the following: (i) approximately 125,492 Class Members whose payment card, login and password information was potentially exposed in the Security Incident; (ii) approximately 66,556 Settlement Class Members whose login and account password, but not payment, information was potentially exposed in the Security Incident; and (iii) approximately 252,112 Settlement Class Members to whom FabFitFun sent notice of the Security Incident out of an abundance of caution but whose PII, upon further investigation, was not exposed or accessed by unauthorized third parties.  Fees Motion Joint Decl., ¶ 20.[2]

### B.   The Settlement Fund

The settlement provides for the creation of a Settlement Fund in the amount of $625,000, which will be used to make payments to Settlement Class Members and to pay the costs of Claims Administration, a Claims Referee to resolve any disputed

---

[2]   Note that the distribution of the 441,160 members of the Settlement Class changed slightly, reflecting fewer individuals whose payment card, login or password information was potentially exposed in the Security Incident.

claims, any Attorneys' Fees and Expenses Award, and any Class Representative Service Awards.  S.A., §§ 1.37, 2.1.[3]  Settlement Class Members were given the option of claiming one of three Basic Awards or a Reimbursement Award of up to $5,000.  *Id.*, §§ 2.2.1, 2.2.2.  Tier 1 Basic awards were initially set at $55.00 for the approximately 125,492 Settlement Class Members, as identified by Defendant's records, who potentially had their payment card, login and password information exposed in the Security Incident; Tier 2 Basic awards will initially be set at $25.00 for the approximately 66,556 Settlement Class Members, as identified by Defendant's records, who potentially had their login and account password, but not payment, information exposed in the Security Incident; and Tier 3 Basic awards will initially be set at $12.00 for the approximately 252,112 Settlement Class Members not in Tier 1 or Tier 2.  FabFitFun notified the Tier 3 individuals out of an abundance of caution, but the PII belonging to these individuals was not exposed or accessed by unauthorized third parties.  *Id.*, § 2.2.1.

Instead of a Basic Award, Settlement Class Members were given the opportunity to claim a Reimbursement Award if:  (i) during the Unauthorized Charge Period they experienced one or more fraudulent or unauthorized charges that they claim in good faith was more likely than not caused by the Security Incident on a payment method they used on Defendant's website during the Class Period, which charges were not denied, reversed or otherwise credited or reimbursed; and (ii) they made reasonable efforts to avoid, or seek reimbursement for, their losses, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance.  *Id.*, § 2.2.2.  Settlement Class Members who claimed a Reimbursement Award will be eligible for reimbursement of up to $5,000.00 total for

---

[3]   Defendant, in conjunction with Angeion, provided, and paid for, the notice required under the Class Action Fairness Act (CAFA), within the timelines specified by 28 U.S.C. § 1715(b).  S.A., § 7.4; Declaration of Amy Fratkin on Behalf of Angeion Group, LLC Regarding Compliance with the Court Approved Notice Program ("Fratkin Decl."), ¶ 4.

the following unreimbursed losses, if any, incurred as a result of the Security Incident: (a) unreimbursed unauthorized charges during the Unauthorized Charge Period[4] on a payment method used on Defendant's website that more likely than not resulted from the Security Incident (only for Settlement Class Members, as identified by Defendant's records, who potentially had their payment information exposed in the Security Incident); (b) up to three hours of lost time spent dealing with the unreimbursed, unauthorized charges at a rate of $20.00 per hour, but only if at least one full hour was spent, and only if the time can be documented with reasonable specificity by answering the questions on the Claim Form; and (c) Out of Pocket Expenses. *Id*.

If there are insufficient funds to pay these amounts based on the number of claimants, the payment to each claimant will be reduced *pro rata* among all Class Members who submitted Approved Claims. *Id*., § 7.3.2. On the other hand, if the total dollar value of all Approved Claims at the payment rates is less than the amount remaining in the Settlement Fund after the Attorneys' Fees and Expenses Award, Service Awards, Claims Administration costs, and any payments to the Claims Referee have been paid in full, the payment amount for all Approved Claims will be increased *pro rata* among all Class Members who submitted Approved Claims by up to double the initial amounts stated above. *Id*. § 7.3.1. Any funds remaining in the Settlement Fund after distributions to Class Members will be distributed to a *cy pres* recipient, selected by the Parties with approval by the Court. *Id*., § 7.6.

## C. Injunctive Relief

As part of the settlement, FabFitFun agrees that it has taken or will take the following steps:

1. Employ a third-party cyber security forensic expert to conduct a risk assessment of the FabFitFun data assets and environment consistent with the

---

[4] The "Unauthorized Charge Period" is the time from the beginning of the Class Period through the 180th day after the Class Period ends. S.A., § 1.39.

1    NIST Risk Management Framework.

2    2.   Offer multi-factor authentication for all FabFitFun customer accounts.

3    3.   Implement a process to train FabFitFun security personnel regarding any new
4         or modified security procedure.

5    4.   Hire additional FabFitFun security/technical personnel, including a Director of
6         Cyber Security or equivalent (subject to Defendant's general employment
7         practices and policies, including at-will employment if applicable).

8    5.   Complete Payment Card Industry ("PCI") Self-Assessment Questionnaire
9         ("SAQ") A.

10   6.   Conduct phishing and penetration testing of the FabFitFun enterprise
11        environment and enterprise user base.

12   7.   Deploy intrusion detection and prevention, malware and anti-virus, and
13        monitoring applications within the FabFitFun environment, as appropriate.

14   8.   Implement regular reviews of the logs of FabFitFun's ecommerce platform, as
15        appropriate.

16   S.A., § 2.5.  These changes will benefit those members of the Settlement Class whose
17   information remains in FabFitFun's possession, and also other customers who make
18   purchases from FabFitFun in the future. Fees Motion Joint Decl., ¶ 35.

19   **D.   Release**

20        The Release included in the Settlement Agreement is narrowly tailored to
21   provide that Plaintiffs and Settlement Class Members completely and unconditionally
22   release, forever discharge and acquit the Released Persons from any and all of the
23   Released Claims. S.A., § 8.1.  Released Claims are limited solely to the claims arising
24   out of the same facts pleaded in the First Amended Complaint. *Id.*, § 1.27.

25   **IV.   Notice to the Class**

26        The Court's Preliminary Approval Order appointed Angeion Group, LLC
27   ("Angeion") to serve as the Claims Administrator and provide notice to the Settlement
28   Class. ECF No. 38, at 13-14.  As detailed in the Declaration of Amy Fratkin on Behalf

of Angeion Group, LLC Regarding Compliance with the Court Approved Notice Program ("Fratkin Decl."), 432,342 Settlement Class Members received direct notice via email and 2,387 Settlement Class Members received direct notice via U.S. mail where the emails bounced back as undeliverable.  Fratkin Decl., ¶¶ 8, 12.[5] Additionally, Angeion posted the long form notice on a dedicated settlement website, www.FFFdbsettlement.com, along with other important documents.  Fratkin Decl., ¶ 14.  Furthermore, Settlement Class Members were able to call a toll-free number with interactive voice response, FAQs.  *Id.*, ¶ 15.

### A.   Claims, Requests for Exclusion and Objections

The deadline to object or opt out of the settlement was June 16, 2021.  As of the filing of this motion, in responses to 432,342 direct Summary Notice emails, 2,387 direct Summary Notice postcards, a website, and a toll-free number, no one has objected to the settlement and only 5 individuals opted out.  Fratkin Decl., ¶ 18-20. The deadline to submit a claim form was July 31, 2021.  As of the date of this filing, the Claims Administrator has received 22,928 claim forms.  This amounts to a 5.27% claims rate, which compares favorably to the claims rates in other data breach class action settlements within this Circuit.  *See*, for example:

| Case Title | Approx. Class Size | No. of Claims | Claims Rate |
|---|---|---|---|
| *Corona v. Sony Pictures Entertainment, Inc*., No. 2:14-cv-9600 (C.D. Cal.), ECF 145-1 at 11 n.8 & ECF 164 at 2 | 435,000 | 3,127 | 0.7% |
| *In re LinkedIn User Privacy Litig*., No. 12-cv-03088-EJD | 6,400,000 | 47,336 | 0.7% |

---

[5]   On September 2, 2021, Angeion discovered that it did not send either email notice or U.S. mail notice to 9,360 Settlement Class members, or approximately 2% of the Settlement Class, who it had identified as having invalid email addresses. Fratkin Decl. at 2 n.1 & ¶ 13.  Counsel has directed Angeion to send notice to these 9,360 individuals.  *Id.*, ¶ 13.  The parties have agreed to re-open the claims, opt-out and objection period for this 2% of the Settlement Class and will submit a more detailed plan and modified notice to the Court for approval with its reply memorandum on September 27, 2021.

| | | | |
|---|---|---|---|
| (N.D. Cal.), ECF 122 at 2 & ECF 145-2 at ¶ 12 | | | |
| *In re Banner Health Data Breach Litigation*, No. 2:16-cv-2696 (D. Ariz.), ECF 170 at 1, and ECF 195-3 at ¶ 12 | 2,900,000 | 39,091 | 1.3% |
| *In re Anthem, Inc. Data Breach Litig.*, No. 5:15-md-02617-LHK (N.D. Cal.), ECF 1007 at 4 & ECF 1007-6 at ¶ 2 | 79,200,000 | 1,380,000 | 1.7% |
| *In re Experian Data Breach Litigation*, No. 8:15-cv-01592-JLS-DFM (C.D. Cal.), ECF 286-1 at 20 & ECF 309-3 at ¶ 8. | 14,931,074 | 436,006 | 2.9% |

Of the 22,928 timely Claim Forms received, 21,777 were claims for a Basic Award (Tiers I, II, and II) while 1,151 claims were Reimbursement requests. Fratkin Decl., ¶ 16.

### B.     Settlement Notice and Administration Expenses

Through July 2021, Angeion has incurred approximately $36,002.53 in expenses associated with identifying and notifying Settlement Class Members and administering the Settlement Fund. Fratkin Decl., ¶ 22. At preliminary approval, Angeion estimated that notice and administration costs will total approximately $83,270. Angeion estimates its future notice and administration costs to be approximately $29,000, with total estimated administrative costs in the amount of $65,000. *Id*.

## V.     ARGUMENT

### A.     The Court Should Certify the Class for Settlement Purposes

Before assessing the parties' settlement, the Court should first confirm the underlying settlement class meets the requirements of Rule 23. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-620 (1997); Manual for Complex Litigation, § 21.632 (4th ed., 2004). The requirements are well known: numerosity, commonality, typicality, and adequacy—each of which is met here. Fed. R. Civ. P. 23(a); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011). In its

Preliminary Approval Order, the Court found that the Settlement Class met the requirements of Rule 23 and preliminarily certified the Settlement Class under Rule 23(b)(3). *See* ECF No. 38, 7-8. Plaintiffs now request that the Court certify the Settlement Class for purposes of this settlement.

### 1. The Rule 23(a) Requirements Are Met for Purposes of Settlement

The Settlement Class includes more than 441,000 individuals identified by FabFitFun and to whom FabFitFun sent notice that their information may have been exposed in the Security Incident; therefore, it readily satisfies the numerosity requirement for purposes of the settlement. *See* Fed. R. Civ. P. 23(a)(1); Joint Declaration of M. Anderson Berry and Rachele R. Byrd In Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Joint Declaration"), ¶ 11.

The commonality requirement, which requires that class members' claims "depend upon a common contention" of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke," is also met for purposes of the settlement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, Plaintiffs' claims turn on whether FabFitFun's security environment was adequate to protect Class Members' PII. The resolution of that inquiry revolves around evidence that does not vary from class member to class member, and so can be fairly resolved—at least for purposes of settlement—for all Settlement Class Members at once.

Likewise, typicality and adequacy are easily met for purposes of settlement. The Class Representatives each allege that they were a FabFitFun customer who purchased new subscriptions from the FabFitFun website from April 26, 2020 to May 14, 2020 and May 22, 2020 to August 3, 2020, may have had their PII compromised, and were therefore impacted by the same allegedly inadequate data security that they allege harmed the rest of the Settlement Class. *See Just Film, Inc. v. Buono,* 847 F.3d

1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class."). The Class Representatives also have no conflicts with the Settlement Class; have participated actively in the case; and are represented by attorneys experienced in class action litigation, including data breach cases. *See Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (adequacy satisfied if plaintiff and their counsel lack conflicts of interest and are willing to prosecute the action vigorously); Declaration of Plaintiff Cheryl Gaston in Support of Plaintiffs' Motion for Approval of Attorneys' Fees, Expense Reimbursement, and Service Awards to Representative Plaintiffs, ECF No. 42-5; Declaration of Plaintiff Renate Garrison in Support of Plaintiffs' Motion for Approval of Attorneys' Fees, Expense Reimbursement, and Service Awards to Representative Plaintiffs, ECF No. 42-6.

### 2. The Requirements of Rule 23(b) Are Met for Purposes of Settlement

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). Here, the Settlement Class is maintainable for purposes of settlement under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair and efficient resolution of the controversy. *Id.* Plaintiffs' claims depend, first and foremost, on whether FabFitFun used reasonable data security measures to protect consumers' PII. That question can be resolved, for purposes of settlement, using the same evidence for all Class Members, and thus is precisely the type of predominant question that makes a class-wide settlement worthwhile. *See, e.g., Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) … .'") (citation omitted).

Additionally, for purposes of settlement, a class action is the superior method

of adjudicating consumer claims arising from the Security Incident—just as in other data breach cases where class-wide settlements have been approved. *See, e.g., In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 5:16-md-02752-LHK (N.D. Cal. July 20, 2019); *Parsons v. Kimpton Hotel & Rest. Group, LLC*, No. 3:16-cv-05387-VC (N.D. Cal. Jan. 9, 2019); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 316-17 (N.D. Cal. 2018); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015). Adjudicating individual actions here is impracticable: the amount in dispute for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. *See Just Film*, 847 F.3d at 1123. Therefore, the Court can and should certify the Settlement Class for purposes of the settlement.

## B.    The Settlement Should Be Finally Approved

Rule 23(e) provides that a proposed class action may be "settled, voluntarily dismissed, or compromised only with the court's approval." In order for a proposed class action to be approved, the Court must determine, after holding a hearing, that it is fair, adequate and reasonable. The Ninth Circuit has looked to the following factors in making this determination: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement; and (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Each of these factors weighs in favor of approval here.

### 1.    The Strength of Plaintiffs' Case

Plaintiffs believe they have built a strong case for liability. With respect to Plaintiffs' negligence claim, Plaintiffs believe they will ultimately be able to offer

evidence that Defendant was negligent in failing to maintain reasonable and current data security programs and practices, which led directly to the loss of Plaintiffs' and the Class' PII.  Joint Decl*.,* ¶ 49.

Plaintiffs also allege that Defendant's failure to protect the PII constitutes a violation of the Oregon Unlawful Trade Practices Act, Or. Rev. Stat. § 646.605, *et seq*. and the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq*. *See* FAC, ¶¶ 93-104, 113-124.  Both of these Acts prohibit businesses from engaging in unlawful business practices, including advertising that its goods and/or services have approval, characteristics, uses, benefits, and qualities that they do not have.  *Id*., ¶¶ 97, 118.  Here, Plaintiffs allege that Defendant violated the Oregon Unlawful Trade Practices Act and the Colorado Consumer Protection Act by, *inter alia*, misrepresenting that it would protect the privacy and confidentiality of Plaintiffs class members' PII, including by implementing and maintaining reasonable security measures.  *See id*., ¶¶ 98, 118-119.  Plaintiffs also believe they have adequately alleged and can prove that Defendant violated the Colorado Security Breach Notification Act, Colo. Rev. Stat. § 6-1-716, *et seq*., which required FabFitFun to accurately notify Plaintiff Gaston and Colorado Subclass members if it became aware of a breach of its data security system in the most expedient time possible and without unreasonable delay.  *Id*., ¶ 108; Preliminary Approval Joint Decl., ¶ 50.  Plaintiffs allege that Defendant failed to disclose the Data Breach in a timely and accurate manner.  FAC, ¶ 110.

Plaintiffs believe their claims are viable and that they have a reasonably good chance of proving that FabFitFun's data security was inadequate and that, if they establish that central fact, Defendant is likely to be found liable under at least some of the liability theories and statutory and common law Plaintiffs pled in their FAC.  Preliminary Approval Joint Decl., ¶ 51.  However, given the heavy obstacles and inherent risks Plaintiffs face with respect to the novel claims in data breach class

1  actions, including class certification, summary judgment, and trial, the substantial

2  benefits the Settlement provides favors final approval of the settlement.  *Id*.

3           2.      **The Risk, Expense, Complexity, and Likely Duration of**
                    **Further Litigation**

4

5           While Plaintiffs believe their case is a strong one, all cases, including this one,

6  are subject to substantial risk.  This case involves a proposed class of hundreds of

7  thousands of individuals (each of whom, FabFitFun has argued, would need to

8  establish cognizable harm); a complicated and technical factual overlay; and a

9  sympathetic and motivated Defendant that already has provided some relief to its

10 potentially affected customers.

11          Although nearly all class actions involve a high level of risk, expense, and

12 complexity—undergirding the strong judicial policy favoring amicable resolutions,

13 *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—this is an

14 especially complex class in an especially risky arena.  Historically, data breach cases

15 face substantial hurdles in surviving even the pleading stage.  *See, e.g., Hammond v.*

16 *The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB) (RLE), 2010 U.S. Dist.

17 LEXIS 71996, at *2-4 (S.D.N.Y. June 25, 2010) (collecting cases).  Even cases of

18 similar widespread notoriety and implicating data far more sensitive than at issue here

19 have been found wanting at the district court level.  *In re U.S. Office of Pers. Mgmt.*

20 *Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not

21 persuaded that the factual allegations in the complaints are sufficient to establish . . .

22 standing."), *reversed in part*, 928 F.3d 42 (D.C. Cir. 2019) (holding that plaintiff had

23 standing to bring a data breach lawsuit).

24          To the extent the law has gradually accepted this relatively new type of

25 litigation, the path to a class-wide monetary judgment remains unforged, particularly

26 in the area of damages.  For now, data breach cases are among the riskiest and

27 uncertain of all class action litigation, making settlement the more prudent course

28 when a reasonable one can be reached.  The damages methodologies, while

theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. And as in any data breach case, establishing causation on a class-wide basis is rife with uncertainty. Additionally, FabFitFun argued in its motion to dismiss that its website terms of use include a class action waiver and provide for mandatory arbitration. While Plaintiffs believe they have valid arguments in opposition, they recognize the risk that FabFitFun may be successful on a motion to enforce the class action waiver and compel individual arbitration. Preliminary Approval Joint Decl., ¶ 52. This would deprive Plaintiffs of the ability to bring this action on behalf of the putative class, result in the dismissal of the claims, and require arbitration of those claims. *Id.*

Therefore, given these risks and uncertainties, Plaintiffs believe the $625,000 Settlement Fund is a good result and provides a substantial benefit to the Settlement Class. *Id.*, ¶ 53.

### 3.     The Risk of Maintaining Class Action Status Through Trial

While Plaintiffs' case is still in the pleadings stage, the Court has not yet certified any class treatment of this case. Class certification in consumer data breach cases is rare and has only occurred in a few cases. *See, e.g., Smith v. Triad of Ala., LLC*, No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574, at *45-46 (M.D. Ala. Mar. 17, 2017). While certification of additional consumer data breach classes may well follow, the dearth of direct precedent adds to the risks posed by continued litigation.

### 4.     The Amount Offered in Settlement

In light of the risks and uncertainties presented by data breach litigation, the $625,000 Settlement Fund achieved for the Settlement Class in this case is a good result. Based on Class Counsel's experience in prior similar cases, and with the claims rates in those cases, the Settlement Fund of $625,000, the Basic Awards, and the up to $5,000 Reimbursement Award should be sufficient to recompense the legitimate individual claims and all class wide claims in the aggregate. Preliminary

1   Approval Joint Decl., ¶ 53.

2       Moreover, the settlement value per class member here of approximately $1.42

3   is on par with or exceeds that in other exemplary data breach settlements.   For

4   example, the consideration paid by Home Depot to settle a data breach class action

5   was approximately $0.51 per class member. *See In re The Home Depot, Inc.,*

6   *Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, ECF No. 181-2

7   (March 7, 2016) (Settlement Agreement); *id.*, 2017 U.S. Dist. LEXIS 221736, at *24

8   (N.D. Ga. Sept. 22, 2017) (order approving settlement).   And the Target data breach

9   resolved with Target paying the equivalent of $0.17 per class member.   *See In re*

10  *Target Corp. Customer Data Sec. Breach Litig.*, No. MDL 14-2522-PAM, ECF No.

11  358-1 (D. Minn. March 18, 2015) (Settlement Agreement); *id.*, 2017 U.S. Dist.

12  LEXIS 75455, at *27-29 (D. Minn. May 17, 2017) (order certifying settlement class

13  on remand from the 8th Circuit).   These comparisons are not intended to disparage

14  the settlements achieved in those cases, but to underscore that Plaintiffs have achieved

15  a good resolution for the Settlement Class.

16      Together, the Settlement Fund and the injunctive measures to which FabFitFun

17  has agreed (S.A., § 2.5) provide Settlement Class Members with both compensation

18  for the damages they may have sustained as a result of the Security Incident and

19  improved security of their PII.

20          **5.     The Extent of Discovery Completed and the Stage of**

21                   **Proceedings**

22       Before entering into settlement discussions on behalf of class members, counsel

23  should have "sufficient information to make an informed decision." *Linney*, 151 F.3d

24  at 1239.   Here, Plaintiffs vigorously and aggressively gathered all of the information

25  that was available regarding FabFitFun and the Security Incident—including

26  publicly-available documents concerning announcements of the Security Incident and

27  notice of the Security Incident to its customers.   Fees Motion Joint Decl., ¶¶ 7, 14, 16.

28  The parties also informally exchanged non-public information concerning the

1   Security Incident and the size of the Class in preparation for a successful mediation.

2   *Id.* Prior to execution of the Settlement Agreement and the filing of this motion,

3   Plaintiffs also received confirmatory discovery from Defendant in the form of a

4   declaration attesting to the nature and extent of the Security Incident. *Id.*

5         Although the parties have not engaged in formal discovery (although Plaintiffs

6   served it), Class Counsel's collective decades of experience in similar types of privacy

7   and data protection practices provided substantive knowledge on the subject to enable

8   Class Counsel to represent Plaintiffs' and Class Members' interests without

9   expending hundreds of hours and enormous financial resources to come up to speed

10  on the subject area. *Id.*, ¶ 55. Accordingly, Plaintiffs are well informed about the

11  strengths and weaknesses of this case.

12            **6.**     **The Experience and Views of Counsel**

13        Class Counsel initiated this lawsuit when FabFitFun announced the Security

14  Incident, which, based upon publicly-available information, may have impacted tens

15  of thousands of FabFitFun customers. Class Counsel have substantial experience

16  litigating complex class cases of various types, including data breach cases such as

17  this one. *See* Preliminary Approval Joint Decl., ¶ 48 & Exs. 2 and 3 thereto. Having

18  worked on behalf of the putative class since the Security Incident was first announced,

19  evaluated the legal and factual disputes, and dedicated significant time and monetary

20  resources to this litigation, proposed Class Counsel endorse the Settlement without

21  reservation. *Id.*, ¶ 56.

22            **7.**     **The Positive Reaction of the Class Members Favors Final**

23                  **Approval**

24        The deadline to object or opt out of the settlement was June 16, 2021. Notably,

25  the Claims Administrator has not received any objections and only 5 individuals

26  opted-out. Fratkin Decl., ¶ 18-20. "It is established that the absence of a large number

27  of objections to a proposed class action settlement raises a strong presumption that

28  the terms of a proposed class settlement action are favorable to the class members."

1  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal.
2  2004); 4 Newberg on Class Actions, § 11:48 ("Courts have taken the position that one
3  indication of the fairness of a settlement is the lack of or small number of objections
4  [citations omitted]"). The fact that no Settlement Class Members objected indicates
5  overwhelming support for the settlement and strongly favors approval.

6                    **8.    Lack of Collusion Among the Parties**

7         The parties negotiated a substantial Settlement Fund, making available
8  $625,000 to resolve this case.  The parties did not commence discussion of fees until
9  agreement on all substantive portions of the class resolution had been reached, and
10 both the class portion of the resolution and the fees were negotiated at arm's-length
11 under the direction of the parties' mutually agreed-upon mediator Martin Quinn, Esq.,
12 who has extensive experience in handling class action cases.  Fees Motion Joint Decl.,
13 ¶ 15. Therefore, the Court can be assured that the negotiations were not collusive.  *See*
14 *G. F. v. Contra Costa Cty.*, No. 13-cv-03667-MEJ, 2015 U.S. Dist. LEXIS 100512,
15 at *43 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the
16 settlement process confirms that the settlement is non-collusive.") (internal quotation
17 marks and citation omitted).

18 **VI.   CONCLUSION**

19        For all of the foregoing reasons, Plaintiffs respectfully request that the Court
20 finally approve the Settlement.

21
22 DATED:  September 3, 2021            **WOLF HALDENSTEIN ADLER
                                         FREEMAN & HERZ LLP**
23
                                      By: */s/ Rachele R. Byrd*
24                                        RACHELE R. BYRD
25
                                      BETSY C. MANIFOLD (182450)
26                                    RACHELE R. BYRD (190634)
                                      MARISA C. LIVESAY (223247)
27                                    BRITTANY N. DEJONG (258766)
28
                                      **CLAYEO C. ARNOLD,
                                        A PROFESSIONAL LAW CORP.**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

M. ANDERSON BERRY (262879)

*Attorneys for Plaintiffs Cheryl Gaston and Renate Garrison*

27589v3